# Henry v. Henry *et al.*

## *Bill in Equity to recover a Legacy.*

1. *Receiver's compensation.*—Where the powers and duties of a receiver are specifically defined, and the salary to be allowed therefor fixed in the order of his appointment, and he accepts the trust, as thus established, such receiver is not entitled to additional compensation for his services in discharging the duties incident to the trust, unless it is shown that it was necessary for him to do some unforseen extraordinary labor, for which it would be competent for the court, in the exercise of its discretion, to make him a further allowance.

2. *Same; reasonableness of allowance.*—Where, on account of the old age and incapacity of an executrix to perform the duties encumbent upon her, the complainant in a bill to enforce the collection of a legacy under the will of her testator is, by consent of all parties in interest, appointed receiver and clothed with all the powers of the executrix, with the exception that he is not authorized to pay debts or defend suits against her, and the greatest liberality was extended him in the allowance of help in collecting the assets of the estate and in the discharge of all his other duties, and the gross amount of the assets of the estate realized by him was $10,000, an allowance of $100 per month, made in the order of appointment, is ample compensation for the services of such receiver.

3. *Reimbursement of receiver for necessary expenditures.*—Where a receiver, without previous authority of court, but upon his own responsibility, incurs an expense in the discharge of his duties, which he shows to have been necessary, and such as the court would have authorized if application had been made in advance, he will be protected by the court against personal loss or responsibility, and will be accorded the same indemnity, which would have been given if the previous authority had been obtained.

4. *Receiver; allowance of counsel fees incurred without authority of court.*—A receiver, or other fiduciary, will not be allowed counsel fees, which have been incurred without authority of court and a previous order, until he satisfies the court by competent evidence, (1), That the fees were for necessary legal assistance, and not for services within the ordinary duties of the° receiver or trustee; (2), that the amount claimed is the fair and reasonable value of the legal services so rendered; and, (3), that the amount asked for has been actually paid, in good faith, by the receiver, or trustee.

5. *Same; liability for counsel fees.*—Where a legatee employs counsel to file a bill in his behalf to enforce the collection of a legacy bequeathed to him, and after the filing of the bill the complainant is,

[Henry v. Henry et al.]

by consent of·all parties in interest, appointed receiver of the estate, the counsel fees to be allowed said receiver for such legal services as it was necessary for him to employ would not include the fees incurred up to the time of his appointment; such services, being rendered for the personal benefit·of·the complainant, were included in his individual retainer of counsel to collect his legacy.

6. *Same; allowance of counsel fees.*—While a receiver should be allowed reasonable counsel fees, which he has paid for legal services rendered necessary by the duties of his receivership, he will not be allowed fees paid counsel for services which are the ordinary duties a receiver is presumed to know how to perform; for such latter service the receiver must pay himself.

7. *Same; same.*—If a receiver undertakes to do things which are outside of the authority conferred upon him, he can not charge the estate in his hands with the expenses incurred therein; and if he employs counsel in such undertaking he will not be allowed the fees incurred therefor.

8. *Same; same.*—Where the receiver of the decedent's estate applies for an order to sell real estate to pay legacies and debts, and the court entertains the application, a reasonable solicitor's fee, if paid by him, should be allowed the receiver. But, where the court, at the expense of the estate, had previously required its register to report all claims against the estate, and the receiver's inventory and all of the parties in interest were already before the court, such solicitor's fees should not be estimated by the charges usually made for obtaining such orders in the probate court; since the receiver's counsel had nothing to do except to invoke the record, and ask for the order.

9. *Same; same.*—A receiver should be allowed a reasonable solicitor's fee, if paid by him, for attending to .the settlement of his accounts, having regard to the result of any litigation that might arise concerning items of the account; since a trustee can not engage in unsuccessful disputes with his *cestuis que trust* over his own accounts, and then charge them with the costs thereof.

10. *Same; same.*—If the receiver of a decedent's estate is diligent in ascertaining all the facts within his reach respecting the merits and value of a claim of the estate against a legatee under decedent's will, and fairly submits the facts so ascertained to his counsel, who are reputable lawyers, and they advise suit, he is entitled to be reimbursed the reasonable costs of such suit, including a reasonable fee paid his counsel for their services.

11. *Same; same.*—Where a suit by a receiver was without merit, and he knew it, but misled his counsel, the estate should not bear the cost of such suit, nor should the receiver be allowed fees paid by him to his counsel.

12. *Interest on legacy; waiver thereof.*—Where, in a bill filed by a legatee to recover his legacy, the complainant does not claim interest on said legacy, and on the hearing of the cause it is shown that the court had required all persons having claims against the estate to file

them with the register, that the legatees filed their claims for their respective legacies, making no claim for interest thereon, that the register reported the amount of each debt, including interest, and each legacy without interest, that on motion of the complainant the report was confirmed, and that the executrix, who was the residuary devisee, paid off the unsecured debts and legacies thus reported and confirmed, the complainant in such suit is not entitled to interest on his legacy; having waived his right thereto.

APPEAL from the Chancery Court of Mobile.
Heard before the Hon. W. H. TAYLOE.
On May 18, 1891, the appellant, Thomas J. Henry, filed the bill in this case against John Henry, Mary Ellen Ruffin, Frank G. Ruffin, Jr., her husband, and Mary Henry, the executrix of the estate of Thomas Henry, deceased. The prayer of the bill was, that the chancery court would take jurisdiction of the administration of the estate of Thomas Henry, deceased, and that Mary Henry, as executrix of the estate of said Thomas Henry, deceased, be decreed to pay to the complainant the legacy bequeathed to him by the will of the decedent, and, if necessary to enforce the payment thereof, that the lands of the estate be decreed to be sold. The material allegations of the bill and the grounds of relief prayed for are sufficiently stated in the opinion.

On May 21, 1891, the complainant in the aforementioned bill, filed his petition for the appointment of a receiver for the estate of Thomas Henry, deceased; and on May 26, 1891, all of the defendants joining in such petition, and consenting in writing that Thomas J. Henry be appointed such receiver, the following order was made, appointing the said Thomas J. Henry as receiver, and conferring the following powers and duties upon him : "It is ordered that Thomas J. Henry be and is hereby appointed receiver to collect by suit or otherwise and receive the rents, incomes and profits of the real estate of the estate of Thomas Henry, deceased, and to receive and collect by suit or otherwise, and get in the personal estate belonging to said estate pending this action. 2. That all deeds, books and documents now in the possession of the defendants belonging to the real and personal estate of said Henry, deceased, shall be delivered over to the receiver so appointed, so that the same may be deposited in this court for the purpose of enabling such person or persons to refer to and use the same

as may be necessary. 3. And it is further ordered that said receiver shall collect and get in all outstanding debts or moneys due to said estate, and to take into possession all notes and drafts or bills of exchange due and owing to said estate, and that all the personal property belonging to said estate may be sold and converted into money by said receiver by and under the direction of this court. 4. That said receiver shall give bond in the penal sum of five thousand dollars with sufficient securities to be approved by the register of this court, conditioned upon the faithful performance of his duties as receiver. 5. That the said compensation of said receiver shall be $100 per month, payable monthly out of whatever moneys he may have in hand, and that the said receiver may, by proper order of this court, pay monthly a reasonable amount of money to Mary Henry, executrix, for the proper support and maintenance of herself and household, and the said receiver may also, upon the proper order of this court, pay monthly to the said John Henry a proper amount of money for his personal support and sustenance, to be paid for his personal services rendered the estate, the said payments to be made and continued pending this litigation. 6. That said receiver shall forthwith prepare and file in this court, a schedule of all the indebtedness of said estate, whether the same be secured by mortgage or not, and he shall also file in this court an inventory of all the property, both real and personal, belonging to said estate, whether the same be pledged to secure debts or not, and he shall take such steps as are necessary for an early winding up of the business of every character of the estate of the late Thomas Henry, deceased. 7. And it is further ordered, that said receiver from time to time shall make report to the court of all his doings in this behalf; and that either of the parties to said cause, or said receiver, shall be at liberty to apply to the court from time to time for such further order or direction as may be necessary, and said receiver shall, upon filing his bond in this court, enter at once into the possession of the real property of the said estate, and notify all the tenants of said estate of his authority, and shall cause to be published a notice of his appointment in some newspaper published in Mobile county. 8. That the said receiver shall have power to dissolve the firm of Thomas Henry & Son, and wind up

the affairs of the said firm, and shall protect the interest of the estate in said firm, and shall have power to bring suit, if necessary, for the protection of the interest of said estate in said firm ; and he shall also have authority to pay taxes due on the real and personal estate belonging to said estate. And until it is sold or disposed of he shall keep all the property of said estate insured in good and solvent companies, and shall cause to be made all necessary repairs to the property of said estate."

On June 1, 1891, the court rendered a decree assuming jurisdiction of the estate. On June 13, 1891, by consent of all the parties, a decree was rendered calling in all the claims against the firm of Thomas Henry & Son, and against the estate of Thomas Henry, deceased ; and it was ordered in said decree that all claims not filed with the register within the time allowed, would be barred, and all parties in interest were given a right to file exceptions to any claims filed, and the register was directed to "ascertain the valid subsisting claims against the said firm and said estate, the amount of the principal of each claim, and the interest on each one to the date of reference, and the date from which each bears interest." Among the claims filed under this last decree, was one of John Henry, one of the defendants. There were objections to this claim interposed by the said Thomas J. Henry, individually and as receiver, and the claim was withdrawn. The report of the register of claims filed against said estate, included the claims of Thomas J. Henry and Margaret Ellen Ruffin for their legacies under the will of $1,000, each. This report allowed no interest on said legacies, and gave no date from which interest could be computed. No exceptions were filed to this report, and it was duly confirmed by the chancellor on September 17, 1891.

In response to a motion by the receiver, filed June 15, 1891, the following order was made on June 17, 1891, enlarging the powers of the receiver : "This cause came on to be heard before the register of this court on Monday, June 15, A. D., 1891, after due notice, and was continued, from day to day, until this, the 17th day of June, A. D. 1891, and now coming on to be heard before the register of this court on an application to enlarge the powers and authority of the receiver heretofore appointed in this cause, and all the parties to this cause consenting

[Henry v. Henry *et al.*]

that said application be granted, it is ordered, adjudged
and decreed, that the receiver, Thomas J. Henry, have
full power and authority to sell and dispose of as rapidly
as possible, all the personal property belonging to the
firm of Thomas Henry & Son, and to collect and realize
as fully as possible upon all the rights, debts, and de-
mands due the said firm of Thomas Henry & Son.   2.
To settle, upon such terms and conditions as in his judg-
ment may be to the best interest of all parties interested
in this cause, all debts, claims, rights and demands that
may come into his hands as receiver, the collection of
which may be or become doubtful; have full power and
authority to accept in payment or compromise of all such
debts, claims or demands, property, real or personal,
whenever it may be to the best interest of all concerned.
3.   To employ at the expense of the parties in interest,
such agents, clerks, and attorneys as it may be or become
necessary for him to employ in order to properly manage
the trust confided to him, and to advise him as to his
rights and duties in regard thereto.   4.   To allow the
said receiver to have power to do all other acts that may
be necessary to enable him to take possession of the prop-
erty, and to enforce and collect the rights and debts due
the estate of Thomas Henry, deceased, and to collect and
enforce the rights and debts due the firm of Thomas
Henry & Son.   5.   To allow him to spend such sum or
sums of money, as in his judgment may be necessary,
having a due regard to economy, in advertising for sale
in newspapers and otherwise the goods, wares, mer-
chandise and other property of the firm of Thomas Henry
& Son.   6.   To allow the receiver to employ, at as early
a date as possible an expert accountant, for the purpose
of ascertaining the exact interest of John Henry, in the
firm of Thomas Henry & Son, in order that the receiver
may submit to this court, at the proper time, a balance
sheet showing the account of each partner in said firm.''

On October 7, 1891, the chancellor confirmed the re-
port of the register, as to the necessity for a sale of the
real estate of the estate of Thomas Henry, deceased, and
ordered that the same be sold.   On November 13, 1891,
a decree was rendered ordering the receiver to file his
account and vouchers, for a final settlement of his re-
ceivership.   On December 1, 1891, Mary Henry filed her
petition, alleging that she had paid all of the debts for

which her property was to be sold, and asked a rescission of the order of sale made October 7, 1891, and that her property be restored to her, together with the leases, insurance policies, &c., relating thereto. The said Mary Henry also filed, on December 24, 1891, a petition of like purport; and on December 28, 1891, the chancellor rendered a decree holding that the said Mary Henry was entitled to the relief asked for in each of her petitions, and ordered that the decree of sale rendered on October 17th, 1891, be set aside and annulled, and that Thomas J. Henry, receiver, deliver to the said Mary Henry the real estate belonging to her, of which he had become possessed by virtue of his receivership, together with the lease contracts, notes and insurance policies relating to said property.

On November 17, 1891, Thomas J. Henry, as receiver, filed his petition asking for an order of reference to the register, to ascertain and report what compensation should be allowed him for his services as receiver, and what compensation should be allowed his solicitors. In response to this petition, the chancellor, on November 20, 1891, ordered a reference before the register. The facts disclosed on this reference, as to the duties performed by the receiver, are sufficiently stated in the opinion. In reference to the compensation of the receiver's solicitors, it was shown that McCarron & Lewis, a firm of attorneys, filed the original bill for Thomas J. Henry, to collect his legacy of $1,000; and that upon the appointment of said Thomas J. Henry as receiver, as stated above, he engaged the said McCarron & Lewis as his solicitors. They represented him in the several steps taken as the receiver which are stated above. The claim filed by said attorneys on this reference was as follows :

"General retainer..........................$   700.00
Attending to matters of receiver in chancery
    court...................................... 1,800.00
Claim of Jno. Henry.......................    900.00
Suit in City Court vs. Savings Bank........     50.45
Suit in Chancery Court vs. John Henry.....    700.00
Northwestern Railroad case................ 1,000.00."
The item, "Suit in Chancery Court vs. Jno. Henry," for which solicitors claim fee of $700, was for filing a bill to settle up the affairs of the partnership of Thomas Henry & Son, composed of Mary Henry and John Henry.

Demurrers were interposed to this bill as filed by the receiver, and it was dismissed by the complainant. As to the item, "Claim of Jno Henry," it was shown that on July 30, 1891, before the time allowed for filing claims by order of court, John Henry filed a claim on his own behalf, against the estate of Thomas Henry, for a very large sum. This claim, after remaining on file for several days, was finally withdrawn by the said John Henry. As to the item "Northwestern Railroad case," for attention to which the said solicitors claim $1,000, it was shown that there was pending in the chancery court of Mobile county the case of the Mobile & Northwestern. Railroad Company vs. Lucy R. Gardner *et al.* in which Mrs. Mary Henry was a party defendant in said case, because she owned a portion of a judgment against the complainant railroad company; but the receiver was not individually a party to the suit there involved, nor in his capacity as receiver; and the firm of McCarron & Lewis in no way represented the receiver in said cause.

On January 26, 1892, the register made his report as to the compensation of the receiver and his solicitors, and therein allowed the receiver $600, and allowed the solicitors of the receiver $4,000, the said allowance being itemized as follows :

"For General retainer, 1% on $70,000......$ 700.00
For filing the bill and attending to all matters
    involved therein....................... 500.00
For attending settlement of receiver's accounts,
    1% on $10,456........................ 104.56
For obtaining order of sale of property...... 450.00
For defending against the claim of John
    Henry................................. 750.00
For suit against John Henry............... 500.00
For defending the suit of the M. & N. W. R.
    R. Co.................................1,000.00."

On December 28, 1891, Thomas J. Henry and Mary Ellen Ruffin filed their petition asking to be allowed interest on their legacies, which had been previously paid to them. The facts in reference to this petition are stated above.

On the final submission of the cause, upon the pleadings and proof, the chancellor, on May 18, 1892, decreed that Thomas J. Henry and Margaret Ellen Ruffin were not entitled to interest on their legacies, and dismissed

their petition ; that the report of the register as to the compensation to be allowed the receiver be confirmed, and that the said report, as to the compensation of the solicitors, be modified, and the compensation allowed them be fixed at $1,500 ; and that, as it was shown by the accounts filed in said cause that said solicitors, had been paid $1,050, the said Thomas J. Henry pay the $450 remaining due the said solicitors, out of the funds ascertained by the register to be in his hands.  It was also decreed that Mary Henry recover of said Thomas J. Henry the sum of $542.82, the balance remaining in his hands as receiver after the payment to the solicitors of the said sum of $450.  After the filing of this decree, the said McCarron & Lewis petitioned the chancellor to make an order requiring Mary Henry, the executrix of the estate of Thomas Henry, deceased, to pay the petitioners the said $450, the balance ascertained to be due them, on the ground that the said Thomas J. Henry was insolvent and had not paid the said amount as decreed by the court. On November 17, 1892, the chancellor decreed that the petitioners were not entitled to the relief prayed for, and dismissed their petition.

Thomas J. Henry now prosecutes this appeal, and his assignments of error are based upon the following rulings contained in the final decree of the chancellor : 1st.  The refusal to allow said Thomas J. Henry and Mary Ellen Ruffin interest on their legacies.  2d.  The refusal to allow the receiver more than $600 for his services.  3d. The refusal to allow the receiver's solicitors more than $1,500 for their services.  4th.  The decree of the chancellor refusing the petition of McCarron & Lewis, and dismissing the same.

McCarron & Lewis, for appellant.—1.  A legacy is payable in this State after the expiration of eighteen months from the grant of letters testamentary ; and bears interest at the legal rate after this time.  The interest due by law upon a legacy is as much a part of the legacy as the principal itself.—*Walker v. Johnson*, 82 Ala. 347 ; *Hallett v. Allen*, 13 Ala. 554 ; *Myers v. Myers*, 33 Ala. 85 ; *Foscue v Lyon*, 55 Ala. 440.

2. Contracts made with the receiver in his official character, within the scope of his duties and the limits of his authority, are not binding on him personally.  The

[Henry v. Henry *et al.*]

party contracting with the receiver looks to the *rem*, the fund of property *in gremio legis* backed by a pledge of the court that it shall be liable for all costs and expenses, legitimately incurred, in pursuance of its orders and decrees.—*Thornton v. H. A. & B. R. R. Co.*, 94 Ala. 353.

3. In some instances the courts have seen fit to fix the compensation of receivers by analogy to the cases of guardians, executors, or other persons occupying fiduciary relations. Thus, in Alabama, it has been held to be the more appropriate method of determining the compensation to allow a percentage on receipts and disbursements as in the case of guardians, although such allowance is not considered as fixing an imperative rule.—High on Receivers, § 785, citing *Magee v. Cowperthwaite*, 10 Ala. 966; High on Receivers, § 783; Code of 1886, § 2645 ; *Pinckard v. Pinckard*, 24 Ala. 250.

5. A receiver will be allowed and should obtain counsel for himself.—High on Receivers, § 188.

OVERALL, BESTOR & GRAY, *contra*.—1. The legatees have waived any right they might have had to the allowance of interest on their legacies.—*Waldrop v. Carnes*, 62 Ala. 374; *Nat. Com. Bank v. McDonnell*, 92 Ala. 387. If Thomas J. Henry and Mrs. Ruffin were dissatisfied with the amount reported by the register in their favor, they should have filed exceptions to the report. Not having filed their exceptions it is too late now to claim any larger sum than was reported in their favor.—*Waldrop v. Carnes*, 62 Ala. 374 ; *Nat. Com. Bank v. McDonnell*, 92 Ala. 387.

2. The receiver was allowed adequate compensation for his services, whether viewed in the light of the decretal order appointing him, or on the basis of compensation allowed other trustees by statute.—*Magee v. Cowperthwaite*, 10 Ala. 968 ; High on Receivers, § § 785, 790, 797 ; Kerr on Receivers, 215, 233, 234, 200 ; High on Receivers, § 798.

3. The fee allowed McCarron & Lewis, the counsel for the receiver, was liberal for the character of the services rendered by them. The receiver had no authority to bring suit, and institute legal proceedings without leave of the court, and if he did so, his solicitors can not look to the trust fund for their fees.—High on Receivers, § § 208, 797, 811 ; *Steele v. Steele*, 64 Ala. 450 ; *Dorsey v. Sibert* 93 Ala. 312 ; Kerr on Receivers, 200.

HEAD, J.—Thomas Henry, of Mobile, died February 9th, 1886, leaving his wife, Mary, and three children, viz., Thomas J., John and Mary Ellen. The latter afterwards married Frank G. Ruffin, Jr. He left a considerable estate, all of which, by will, he devised and bequeathed to his wife, except a pecuniary legacy of $1,000 to each of his three children. She was named executrix without bond. She probated the will February 27th, 1886, in the probate court of Mobile county, and received letters testamentary. Thomas Henry was a crockery merchant in Mobile, in partnership with his son John, under the name of Thomas Henry & Son; but he furnished all the capital, and, it seems, in fact, that when he died he owned the whole business if a settlement of the partnership had then been made. After his death, the widow (we suppose deeming herself the owner of her husband's estate, as she was, subject to debts and the pecuniary legacies), entered into co-partnership with her son, John, to carry on the same business; and they did carry it on, under the same firm name of Thomas Henry & Son, until it was terminated by this litigation, in May, 1891. The testator left a large city real estate, but it was heavily incumbered by mortgages. The widow had the possession and use of it until dispossessed by this litigation, in May, 1891. Meanwhile, the estate was badly managed. The widow was old and infirm and unable to give it much attention, and she relied chiefly on her son, John, to manage it. He did not prove a success. The mercantile business, under his charge, was unsuccessful; the stock and assets constantly declined and debts accumulated. The real estate was suffered to grow into bad repair, and its annual rental income to be considerably diminished. Mortgages upon it to over $30,000 were not discharged, and the interest on the mortgage debts not well kept paid up. Taxes were not all paid. Besides the mortgage debts, the testator owed some $1,800 which remained unpaid. The legacies to Thomas J., Henry and Mrs. Ruffin were not paid. The executrix did nothing in court, in the way of administering the estate, except to probate the will. She took no steps looking to a settlement. In this condition of affairs, Thomas J. Henry retained the law firm of McCarron & Lewis to collect his legacy, and, on the 18th day of May, 1891, they filed this bill for him, for that purpose; making the executrix and

other legatees defendants.    Thomas J. Henry, of course, had no other interest in the estate than the collection of his legacy.   So that was paid, it did not concern him, pecuniarily, what became of the rest; but, the estate being involved, as we have indicated, it was indispensable to the coercive collection of his legacy that a full account of the assets, debts, and unpaid legacies be taken. Hence the bill, as a means to the prime end, prayed for such an account, and further that the administration be removed to the chancery court and there settled.   The court shortly afterwards passed a decree assuming jurisdiction of the administration and settlement of the estate. Ordinarily, in such cases, the personal representative, being brought before the court, is there, under the orders and decrees of the court, required to perform his office, retaining in his possession the assets of the estate and administering them, as by law and the orders of the court he must; and, in discharge of these duties, he is allowed the benefit of necessary legal counsel, the reasonable cost of which the court will reimburse him from the trust estate, unless it appears the expense, though necessary, was superinduced by his own fault.   In the present case, however, it was conceded by all parties, including the executrix herself, that she, by reason of her age and general incapacity, was incapable of performing the office well; and by consent of all the parties, the complainant in the bill, Thomas J. Henry, a few days after the bill was filed, was appointed receiver in the cause.   The powers and duties conferred upon him by the order of his appointment, and as they were subsequently enlarged by an additional order, will be set out by the reporter; and from them it will be seen, that, by the consent of all parties in interest, this receiver was, for all practicable purposes of administration, substituted for the executrix, and clothed with all her powers, with the exception, (which was an important one), that he was not authorized to pay debts, or defend suits pending or instituted against the executrix.

The authority of the receiver having been specifically defined by the court, all other authority on his part was excluded, and the powers and duties of the executrix, which, by law, appertained to her office, were displaced, by his appointment and the specification of his authority, to the extent only that such specification expressed or

fairly implied. She retained all powers and duties, in reference to the administration, not expressly or by necessary implication, conferred upon the receiver. She could not, of course, have performed any act which might have conflicted with the authority of the receiver. Occupying this position; substituted, as it were, within certain limitations, for the executrix, he, like her, became entitled, upon his appointment, to the benefit of counsel to guide and assist him in the discharge of his duties, and for all sums reasonably paid out by him for such counsel, the court should have reimbursed him from the trust estate. -The assignments of error, on behalf of the receiver, as such, involve, alone, questions touching the allowance of counsel fees and receiver's compensation. As to the latter, that was settled by the order of his appointment. He accepted the office with a salary prescribed. That salary he received. It is undoubtedly true, that, if unforeseen extraordinary labor had developed, it would have been competent and proper in the court, in the exercise of its discretion, to make him a further allowance. This was not a case for the exercise of that discretion. He evidently knew the condition of the estate when he accepted the trust. Practically, everything he did, in the line of his duty, was foreshadowed in the order of his appointment, and the orders enlarging his powers made only a short time thereafter. The greatest liberality was extended him in the allowance of help. A most ample corps of men, at a cost enormous in proportion to the value of the stock, was employed to dispose of the old, badly damaged stock of goods, which realized only $8,000, or a little over. Attorneys collected the claims for him, at a commission of about twenty-five per cent. Real estate agents took charge of the real estate, rented it out and collected the rents for him, at a commission of five per cent. An expert accountant was allowed him, at a cost of three hundred dollars, to make out his brother John's account, as surviving partner, from the books of Thomas Henry & Son. The gross amount of assets realized by him amounted to a trifle over $10,000; and for his services and expenses in producing this result, and looking after the insurance and repairs of the property, the table thereof in the printed brief of appellees' counsel, which we take to be correct without going through the voluminous record to verify

it, shows that he paid and was allowed the unprecedented amount of $4,665, besides the fees of his solicitors, for all of whose services in and about the receivership, an allowance of $1,500 was made by the court. All this was done during a period of six months. These expenditures do not include insurance premiums and costs of repairs. We think $100 per month to oversee a business of this size and character, and under these circumstances, a most abundant allowance, particularly to one whose services previously commanded only $10 or $15 per week and board. Let nothing more be said touching his claim for additional compensation.

We recur then to the allowance of counsel fees claimed by the receiver. $1,500 were allowed by the court. $2,500 more are claimed, making in all $4,000. When a receiver is appointed and property is committed to him, as such, he becomes the officer and custodian of the court. It is his duty to keep the property committed to him according to the directions and orders of the court. If the office be of an administrative character, or in the nature of a trust being administered by the court, or for the purpose of carrying on a business, it is his duty to administer it, likewise, under and in pursuance of the orders and directions of the court. Strictly speaking, he has no right to make any contract binding the property, or to pay out the funds in his hands, as receiver, without first obtaining the authority of the court. But it is clearly his right and duty, whenever it becomes necessary, in the performance of the duties of his office, to incur an expense, or make a contract or obligation, or pay out funds, to apply to the court and obtain an order authorizing him to do so, and prescribing, definitely, when the court deems it necessary, the terms of the authorized undertaking, and the sum or sums to be paid ; and that when he acts in accordance with this authority, he will be protected by the court against personal loss or responsibility, and granted allowance for the sum or sums so paid out. In some jurisdictions, the tendency is not to recognize any obligation or expense incurred or paid by a receiver, and to make him no allowance therefor, unless incurred or paid in pursuance of authority so previously obtained. We would adopt, however, the more liberal rule which generally obtains in reference to administrative trusts, that if a

receiver, without previous authority, but upon his own responsibility, incurs an expense in the discharge of his duties, which he shows to have been necessary, and such as the court would have authorized if application had been made in advance, to accord him the like indemnity which would have been accorded if the previous authority had been obtained. The attitude of the present receiver is such that he now comes before the court asking the allowance under the last named condition, viz.: allowance for counsel fees for solicitors whom he employed on his own responsibility, without previous authority, for services already rendered. He can not claim to occupy any other position, for if the action of the court appealed from was upon an application in behalf of the solicitors themselves for an allowance of fees to be paid directly to them from the funds in the custody of the court, or to be charged upon the property in the custody of the court, he has no interest in, and is not prejudiced by, such action. The solicitors themselves are the parties to complain. Treating him then as claiming the allowance in his own behalf, has he shown a case entitling him to it? What are the principles which govern in the allowance of counsel fees, to a fiduciary who has incurred them without the authority of the court? First, it is for necessary *legal* assistance that allowance may be made. A trustee has no authority to employ attorneys, at the expense of the estate, to perform the ordinary duties of the trust or office which any ordinarily competent business man is presumed to be capable of performing. Those are his duties, and he is paid for them. It is for services requiring special legal skill that he will be allowed counsel fees. To illustrate: He may have an attorney to obtain for him a necessary order of court to sell a stock of goods; but he can carry out the order as well as the attorney. He knows, as well, the character of the goods, their value, what salesmen and bookkeepers are reasonably necessary and what he ought reasonably to pay for their services, and the best manner of disposing of the goods. His acceptance of the trust presupposes that he is capable of performing all such duties, and if he employs attorneys to advise and assist him, in performing them, he must do so at his own expense. So also, no legal skill is required in insuring and repairing storehouses and renting them out

[Henry v. Henry *et al.*]

and collecting rents. Any business man, also, can assess
and pay taxes. If a demand is made upon the receiver
of questionable legality, he may have legal advice and
aid in reference to it. If he has a demand upon another
whose legality is questioned, or which requires legal aid
to enforce it, he may have an attorney. Secondly. It
is for legal services for which he has paid the attorney,
that he can claim allowance from the estate. Indeed,
this is true, if he had employed the counsel under an
express order of the court previously obtained, prescrib-
ing the terms of the employment and the amount to be
paid. In that case, when he comes to render his accounts,
he would be required to show that the services had been
rendered and that he had paid for the same, not in ex-
cess of the amount allowed by the court, before he would
be allowed credit for the same. His position in this re-
gard is the same as any other accounting officer or
trustee. We have long since settled, in this State, in
the case of an executor or administrator claiming credit
for a disbursement alleged to have been made by him,
that he must, if disputed, prove, not only the correct-
ness of the demand, but that he has paid it.—*Gaunt v.
Tucker*, 18 Ala. 27; *Pearson v. Darrington*, 32 Ala. 227;
*Bates v. Vary*, 40 Ala. 421; *Teague v. Corbitt*, 57 Ala.
529; *Harwood v. Pearson*, 60 Ala. 410; *Jenks v. Terrell*,
73 Ala. 238; High on Receivers, § 805. The cases of
*Bates v. Vary* and *Teague v. Corbitt*, *supra*, were upon the
allowance of counsel fees. In the latter case, the court
say : "In this, as in all cases in which a trustee claims
a credit, it must be shown he has paid the counsel the
amount for which a credit is claimed." We think this
rule is one wholesome in its influences, and should be
upheld with a steady hand. When a trustee or receiver
contracts for professional aid, it is his duty to act with
the same care and prudence that a cautious and prudent
man would, in making a like contract for his own bene-
fit. He should seek to get competent counsel, upon
terms most favorable to the estate. To secure this, not
only in reference to counsel fees, but all other expenses
of the trust which he takes upon himself to contract
without previous authority of the court, he must know
when he incurs them, that he can not obtain allowance
for them until he shows that they were necessary and
that he has paid them, and the amount paid therefor,

their reasonable value. In no case, except when the
*cestuis que trust* are *sui juris* and waive it, should a court
suffer a credit to stand, or be entered upon the account
of any trustee, for expenses incurred without a previous
order, whether for attorney's fees or otherwise, until he
satisfies the court by proof, 1. That the expense was
a reasonably necessary one, and for a service not within
the ordinary duties which the trustee should himself
perform. 2. That the amount claimed is the fair and
reasonable value of the service ; and, 3. That the amount
has been actually paid, in good faith, by the trustee.
If the courts would vigorously enforce this rule, trust
estates would not suffer, as many have suffered in the
past. The loose practice of executors, administrators,
guardians and other trustees, of employing counsel,
generally, without regard to cost; without effort to ob-
tain the best terms practicable for the estate ; with no
thought of personal responsibility, or expectation of
payment until allowance is made, but, too often, upon
the assumption, expressly or impliedly indulged by
both, that the attorney shall receive only what he may
induce the court to allow from the funds in hand,
after the service has been rendered, is fraught with evil,
and should not be encouraged. Under its influence, estates
have, not infrequently, been, in large measure, swallowed
up in cost, and, in some instances, courts, created to
protect the helpless, actually brought into public dis-
favor. We mean no reflection upon any one connected
with this cause. Our observations are to emphasize the
wisdom of the rule we re-affirm. We will not be under-
stood as holding that when the chancery court has a
fund *in gremio legis*—a fund in the hands of its officer—
it may not direct a claim shown to have been prop-
erly incurred by the trustee, although without previous
authority, to be paid, from the funds in court, directly
to the party in whose favor it was incurred. Cases
may arise where this course will best conserve the rights
of all. That is a question, however, which concerns
the creditor. The trustee or receiver, who has had the
receipt and disbursement of the funds of the estate,
can not complain of the court's refusal to exercise this
power. If the claim is a proper one, he should have
paid it himself and asked allowance for it. The present
appeal, as we have said, is by the receiver. He alone

assigns errors. We can not consider the rights of Mc-Carron & Lewis, the solicitors, if any, upon their petition which the chancery court denied. They are not before this court. The case so stands before us, that the receiver is here alone, as the complaining party, asking for allowance for an item of expense, incurred by him, without previous authority, which he has not paid, and may never pay. It can not be allowed. If the case came before us from an application by the receiver to the court to raise a cash fund from the property of the trust estate, to enable him to pay expenses necessarily and reasonably incurred in the discharge of his official duties, a different question would be presented. What our decision would be, if so presented, we need not indicate.

This disposes of the errors assigned by the receiver, as such; but the parties have elaborately argued the validity of the various items of fees claimed in behalf of his counsel, in respect, first, of the right of the receiver to incur them, and, second, the reasonableness of their amounts. It may not be amiss in us to lay down some rules governing the rights of the receiver to contract them. We shall say nothing as to the reasonableness of the amounts claimed. 1. The services of the solicitors to the time the receiver was appointed were, as a matter of course, rendered for the client, the complainant in the bill, its object being the collection of the legacy. This includes procuring the appointment of a receiver. The services being rendered for the personal benefit of the complainant, were comprehended in his retainer of the counsel to collect his legacy. It was proper to allow the receiver, if he had paid it, a reasonable fee for such general legal advice, as he obtained and the nature of his duties made necessary. In making such allowance, careful discrimination should be observed, as we have already said, between the ordinary duties which the receiver is presumed to know how to perform, as well as one skilled in the law, and those duties which require such special skill. If he commanded the time and trouble of the attorneys to advise and assist him about matters which any good business man could perform, he must pay for it himself. 2. Again, regard should be had to the receiver's authority. If he undertook to do that which was outside his charter of powers, he can not charge

[Henry v. Henry *et al.*]

the estate in his hands with expenses incurred therein. As we have said, he had, under the orders of his appointment, no authority touching the debts owing by the estate, except to pay the taxes. The office of executrix was not entirely superseded. She was before the court, and necessarily so. She retained all official functions not conferred upon the receiver, and in their exercise, she could apply for and obtain the aid of the court, who had plenary power over the receiver, herself as executrix, and the trust estate. She thus had the means of looking after and caring for the debts which were pressing and threatening sales of the property, to the same extent the receiver would have had, if he had been authorized in that behalf. If he undertook to perform her retained functions, he did so upon his own responsibility, and must bear personally the expense incurred. Advice of his counsel, in such matters, should have been eliminated, in estimating the reasonable value of the general retainer. 3. The receiver applied to the court for an order to sell the real estate to pay legacies and debts, and the court entertained the application. For this service, a reasonable fee, if paid, should have been allowed. It would seem, however, that this fee should not be estimated by the charges usually made for obtaining such orders in the court of probate, for the following reasons: At the expense of the estate, the court had required its register to ascertain and report all claims against the estate, which was done. The receiver's inventory of the assets was before the court. In a proceeding in the probate court, these—the existing debts and insufficiency of personal assets to pay them—are jurisdictional facts which must be skillfully set forth in order to a valid sale of the realty, and the petitioner, through competent counsel, must undergo the labor and skill of seeing that jurisdiction of the persons of all the interested parties is acquired, and producing the proper proof, in the proper way, in support of the desired order ; but here, the chancery court had already ascertained and put upon its records, all necessary *data*. The parties were all before the court. The receiver's counsel had practically nothing to do but to invoke the record, and ask for the order. 4. A reasonable fee should have been allowed for attending to the settlement of the receiver's accounts, guided by the amount involved and the labor attending it. If there

was litigation concerning items of the account, regard should be had to its result. A trustee can not engage in unsuccessful disputes with the *cestuis que trust*, over his accounts, and charge them with the cost. 5. It was within the receiver's duties to look after the estate's claim against John Henry, and he was entitled to a counsel in the matter. It was his duty to be diligent to ascertain all the facts, within his reach, respecting the merits and value of the claim, and fairly lay them before his counsel; and if he did so, and his counsel, who are reputable lawyers, advised him that it was his duty to sue, he had a right to engage them to bring the suit, and should have been reimbursed the reasonable cost thereof. In fixing the amount, regard should have been had to the nature and probable value to the estate of the demand, the character of the proceeding necessary to enforce it, and the labor and skill attending it. 6. The same may be said of the suit against the savings bank. The indications of the record are that this suit was without merit, and that the receiver knew it, though his counsel were misled. Besides, the unfortunate letter of the receiver to his old mother, which we find in the record, betokens intense bitterness of feelings towards her and his brother, in regard to this claim. We forbear to make public its contents. May we not hope the letter was no sooner sent than regretted. If he brought the suit to gratify such feelings, without properly informing his counsel of the facts of the case, the estate should not bear its cost. 7. As we have said, the receiver had nothing to do with the debts of the estate, or suits against the executrix. Most clearly, he was entitled to no solicitors fees for the M. & N. W. R. R. Co. case.

The complainant assigns as error the refusal of the court to allow him interest on the legacy. Conceding that he was at one time entitled to interest, he clearly waived it. By order of the court, all persons having claims against the estate were required to file them with the register, who was required to report them to the court. The legatees treated the order as embracing legacies, and filed their claims therefor, making no claim for interest. The register reported, giving the amount due on each debt, including interest, and giving each legacy at $1,000, without interest. On motion of complainant, the report was confirmed without objection. Afterwards the exe-

[Morris v. Brannen & Sons *et al.*]

cutrix and residuary devisee raised a sufficient sum of money to pay off the debts and legacies (which did not include the mortgage debts) so reported and confirmed, and paid the same; and the real estate was restored to her possession, whereby all the purposes of the litigation were accomplished. The bill did not claim interest on the legacy. After all this, the complainant came in and asked for interest, to be charged on the real estate—the personal assets having all been exhausted. The chancellor properly disallowed the claim.

Affirmed.