# Saulsbury v. Lady Ensley Coal, Iron & Railroad Co.

*Proceedings upon the Appointment and resignation of a Receiver at the Suit of Creditors of a Corporation.*

1. *Receiver; reimbursement for necessary expenditures.*—When it does not appear that the receiver, who resigned his trust, was guilty of any malfeasance or improper discharge of duty, which superinduced his resignation and its acceptance by the court, it is equitable and proper that he be protected, within the limit of just compensation, against personal loss in respect of the expenses of his administration, care being taken that no burden is imposed by his voluntary and premature termination of his office.

2. *Same; allowance of counsel fees.*—While a receiver should be allowed reasonable counsel fees, which he has paid for legal services rendered necessary by the duties of his receivership, he will not be allowed fees paid counsel for the performance of the ordinary duties which the receiver is presumed to know how to perform, as well as one skilled in the law.

3. *Same; allowance for services of an attorney under a general retainer by the receiver, who resigns his trust.*—In fixing the compensation to be allowed an attorney under a general retainer by a receiver,

who shortly after his own appointment resigns his trust, the estimate must be confined to the reasonable value of the general legal advice and assistance actually rendered the receiver during his administration; and there can not be allowed compensation for the value of legal services which must needs be secured and paid for by such re-receiver's successor in the trust.

4. *Same; allowance of counsel fees.*—A receiver is not entitled to allowance for the services of an attorney, in assisting him in hunting up and taking into possession the property which belonged to the estate; since it is a personal duty of the receiver to look after such matters.

5. *Same; same.*—Where, upon a bill filed for that purpose, a receiver is appointed, and from the order of appointment an appeal is taken by the defendant, the receiver so appointed is not entitled to compensation for services of an attorney in defending said appeal, since the duty of sustaining the appointment rests upon the complainant in the suit; and if the receiver chooses to defend the appointment, the compensation to his attorney must be paid by him individually, and not out of the trust estate.

6. *Same; same.*—If, in the management of the affairs of a business of which a receiver has been appointed, it is necessary to appoint agents in writing and to have certain particular contracts drawn in writing, the receiver is entitled to compensation for services of an attorney in the preparation of such instruments.

7. *Same; same.*—Since the giving of a bond is a condition precedent to a receiver's qualification, it is his personal duty to prepare and execute the bond required, and he is not entitled to compensation for services of an attorney in the preparation of such bond.

8. *Same; same.*—Where the necessity for an application to the court for orders to succeeding receivers to pay laborers employed and worked by the receiver first appointed, is brought about by the prior receiver's voluntary resignation, such former receiver is not entitled to compensation for attorney's fees in making the application to the court and in procuring the order.

9. *Same; same.*—When, in the management of the affairs of a business corporation, which has been placed in the hands of a receiver, it is necessary to obtain money upon the shipments of products of such company, in order to carry on the enterprise, in accordance with the directions contained in the order of appointment, and by reason of the arrangements made therefor by the receiver having miscarried there were about to arise serious complications, the employment of an attorney to attend to the matter and take such steps as were necessary to protect the trust estate is proper, and the receiver should be allowed compensation paid to his attorney for such services.

10. *Same; same.*—It is customary and proper to allow a receiver or other fiduciary the benefit of legal counsel to prepare his accounts for, and to represent him in, the settlement of his trust, and for such

[Saulsbury v. Lady Ensley Coal, Iron & Railroad Co.]

services of his attorney a receiver or other fiduciary should be allowed compensation.

11. *Same; same.*—Where a petition to the chancellor for a decree of reference to ascertain the amount to be allowed for receiver's compensation and for a solicitor's fee, and for an order to the succeeding receivers for their payment, is rendered necessary by the first receiver's voluntary resignation, no compensation should be allowed his attorney for services in that behalf.

APPEAL from the Chancery Court of Walker.

Heard before the Hon. THOMAS COBBS.

The appeal is prosecuted by W. K. Saulsbury, the former receiver of the Lady Ensley Coal, Iron & Railroad Company, from a decree of the chancellor sustaining exceptions to the report of the register of a reference held to ascertain the amount due as solicitor's fees for services properly rendered by the solicitor to the receiver pending his receivership. The circumstances leading up to the appointment of the appellant, W. K. Saulsbury, as receiver, and the facts attendant thereon, are sufficiently shown in the opinion.

In response to a decree of the chancellor, that John J. Moore file with the register an itemized statement under oath of the services he rendered as solicitor in this case for W. K. Saulsbury, as receiver, showing the value of each and all of said services, the register should hold a reference and ascertain what services were so rendered by Moore, and the value of the same, the said John J. Moore, on March 24, 1894, filed in the office of the register the following statement of account of his services, which was duly verified by oath of said Moore before a notary public:

"Birmingham, Ala., March 20th, 1894.

W. K. Saulsbury, Receiver of Lady Ensley Coal, Iron & Railroad Co.,

To John J. Moore, Dr.

1893.

April, 19.

1.  To retainer fee...........................$1,500.00
2.  Trip to Horse Creek, Jasper, Russellville and Sheffield to assist the said Receiver to get possession of all the property of said company, immediately after his appointment, and advising him in regard thereto, ........................   500.00

[Saulsbury v. Lady Ensley Coal, Iron & Railroad Co.]

3.  Legal services in getting up and drafting form for appointment of agents of receiver at various divisions of company at Jasper, Horse Creek, Bessie Mines, Russellville and Sheffield, Ala., and advice in reference thereto,............     50.00

4.  Legal services in drafting bills of sale and contracts for sales of iron, and advice in reference thereto,.................    100.00

5.  Fee for representing receiver on hearing of appeal from order of register appointing him, which appeal was heard in Jasper and Birmingham, Ala., also, preparing 57 affidavits and filing same, and advising said receiver in and about said appeal,......................... .....    500.00

6.  To legal services in drafting receiver's bonds and assisting him in securing and filing same, and advising him, in reference thereto,......................     50.00

7.  To legal services rendered said receiver in and about preparation, revision and filing inventories of the property taken in charge by the receiver at Birmingham, Bessie Mines, Horse Creek, Jasper, Sheffield, and Russellville, Ala., and advising him in reference thereto,.....    300.00

8.  To fee for presenting petition to chancellor for order and obtaining order thereon for payment of laborers at Horse Creek, Ala.,................................     50.00

9.  To fee for presenting petition to chancellor and obtaining order thereon for payment of laborers at Russellville,.......     50.00

10. To fee for presenting petition to chancellor and obtaining order thereon for payment of laborers at Sheffield,........     50.00

11. To fee for legal services rendered said receiver in trips to Cincinnati, Ohio, whereby the payment of some $8,000 by Matthew, Addy & Co., for iron sold them by the receiver was accomplished, and advice,......................    800.00

[Saulsbury v. Lady Ensley Coal, Iron & Railroad Co.]

12. To fee for legal services in preparing, arranging, supervising, presenting and filing said receiver's accounts for a final settlement, and advising him with reference thereto, ..................... 300.00

13. To legal services in drafting and presenting to chancellor in vacation petition of receiver for decree of reference and obtaining said decree thereon directing register to state receiver's accounts, .. 50.00

14. To legal services rendered said receiver in attending said reference and taking testimony thereat before the register ..... 250.00

15. To fee for appearing for and representing said receiver on final hearing of receivership proceedings, ................... 500.00

16. To fee for obtaining final decree confirming his accounts and final discharge of said receiver, ...................... 100.00

17. To cash expended—hotel bills and traveling expenses—exclusive of trip to Cincinnati, ........................... 50.00

Total ..................... $5,200.00"

After hearing the testimony upon this reference, the register in chancery made, on May 2, 1894, a report ascertaining that said John J. Moore was entitled to fees and compensation amounting in the aggregate to $2,275 for services as solicitor of W. K. Saulsbury, as receiver. The report of the register was as follows :

"1. I find that said J. J. Moore rendered the services to said former receiver, W. K. Saulsbury, as shown by his itemized account filed in the cause on the 24th day of March, 1894, except the 10th item of said account. The burden of proof fails to show that this item of service was performed, and hence no compensation will be allowed for the same. *   *   *

"The 16th item of said account being for the identical service charged for in 15th item, no compensation will be allowed for it, the decree therein mentioned being written by Chancellor W. H. Tayloe, and being the same decree rendered on final receivership proceedings.

"It is the opinion of the register that a general re-

tainer or counsel fee should be allowed J. J. Moore in
this cause, but that retainer or counsel fee should cover
all matters of advice and counsel to the receiver, and
therefore no compensation should be allowed for items 2,
3, 4, 6, 7 and 12 of said account; all services therein men-
tioned, except advice of counsel, not being strictly legal
services, and the bills of sale and written appointment
of agents not being shown to be necessary.

"Giving due weight to the opinion of each witness ex-
amined on the reference in this cause, and taking into
consideration their experience, respectively, in the prac-
tice and in the matter of fees in similar cases to this,
the register feels warranted in finding and reporting
the following as reasonable fees and compensation to be
allowed said J. J. Moore, for services as solicitor as afore-
said, for W. K. Saulsbury, former receiver, viz.:

"Item 1.   Retainer or counsel fees,......... $1,000.
"    5.   Representing Receiver on appeal,&c.    300.
"    8 and 9.   Petitions to chancellor for order
                to pay laborers at Horse Creek and
                Russellville,....................    75.
"    11.   Trip to Cincinnati, Ohio,.........    400.
"    13.   Petition to chancellor for decree of
                reference,.......................    50.
"    14.   Attending reference and taking tes-
                timony,.........................    200.
"    15.   Representing receiver in court on
                final settlement,...............    200.
"    17.   Cash expended, hotel bills, &c.....    50.

Total fees and compensation,...: $2,275.
"Respectfully submitted, this 2d day of May, 1894.
            (Signed)   SHERIFF LACY,
                                        Register."

On May 4, 1894, exceptions were filed to this report
of the register. The first exception was to the allow-
ance by the register of the sum in the aggregate. The
second was directed to the allowance of item one of the
report. The third was to the allowance of item five.
The fourth was to the allowance of items eight and nine.
The fifth was to the allowance of item eleven. The
sixth was to the allowance of item thirteen. The seventh
was to the allowance of item fourteen. The eighth was
to the allowance of item fifteen. The ninth was to the

allowance of item seventeen. In each of these exceptions reference is made to the testimony of the many witnesses examined on the reference before the register. The facts pertaining to each of these exceptions and the several items of fees allowed the solicitor, are sufficiently shown in the opinion, which renders it unnecessary to set out at length the voluminous testimony of the several witnesses examined before the register on the reference held.

On October 9, 1894, upon the submission of the cause upon the register's report and the exceptions thereto, the chancellor rendered the following decree: "This cause coming on to be heard was submitted upon the register's report and the exceptions thereto, and was argued by counsel, and being duly considered, it is ordered, adjudged and decreed, that the exceptions numbered four, six, seven, eight and nine, are sustained in part, and overruled in part. The court is of the opinion that the sum of three hundred dollars should be allowed in the aggregate on those vouchers. All the other exceptions are well taken and are sustained.—*Henry v. Henry*, 103 Ala. 582. The report of the register is corrected by the allowance of the sum of three hundred dollars, in lieu of the amount reported, and as corrected, the report is ratified and confirmed." From this decree W. K. Saulsbury, the former receiver appeals, and assigns the rendition thereof as error.

JOHN J. MOORE and MOUNTJOY & TOMLINSON, for appellant.—1. If receiver employs a lawyer, he is liable for the services that may be rendered under such employment, and the court grants to the receiver—not the attorney—allowance for the same.—Gluck & Becker on Receivers of Corporations, pp. 294, 295, § 76. Retainer can be proven and specially recovered for.—*Knight v. Russ*, 19 Pac. Rep. 698; *Perry v. Lord*, 111 Mass. 504. Receiver in proper cases is entitled to retainer.—*Henry v. Henry*, 103 Ala. 582. Attorney employed by trustee entitled to retainer when his employment ended without his fault.—*Munden v. Bailey*, 70 Ala. 63: *Cowdrey v. Galveston, H. & H. R. R. Co.*, 93 U. S. 352: *Manderson v. Guarantee Co.*, 5 Cen. Rep. (Pa.) 214; *Crowell v. Truax*, 94 Mich. 585, 54 N. W. Rep. 384; *Stewart v. Boulware*, 133 U. S. Sup. Ct. 78.

[Saulsbury v. Lady Ensley Coal, Iron & Railroad Co.]

2. When amount of compensation not fixed, evidence of what is ordinarily charged by attorneys at law in cases of the same character is admissible.—*Stanton v. Embrey*, 93 U. S. 548; *Russ v. Knight*, 19 Pac. Rep. 698. Attorney should have the same fees on the *quantum meruit*, that they would be entitled to if contract made beforehand.—*Middleton v. Bankers & Merchants Tel. Co.*, 32 Fed. Rep. 524. Attorney is entitled to charge for making trips connected with the business of his client.— *Crowell v. Truax*, 94 Mich. 585. Receiver is entitled to allowance for resisting motion for his removal when charges withdrawn and he voluntarily resigns.—*Cowdrey v. G. H. & II. R. R. Co.*, 93 U. S. 352.

3. Trustees will be allowed necessary counsel fees incurred in the protection and administration of the trust estate.—27 Amer. & Eng. Encyc. of Law, 175, note 2 and authorities cited; *Grimball v. Cruse*, 70 Ala. 534.

4. Trustee has a right to charge trust property for services to be performed, either for obtaining possession of or the preservation of the trust property.—*Randall v. Dusenbury*, 79 N. Y. Sup. Ct. 174.

ROBERT H. PEARSON, *contra*, cited *Henry v. Henry*, 103 Ala. 582.

HEAD, J.—In the case of Horse Creek Coal & Coke Company v. Lady Ensley Coal, Iron & Railroad Company, the Central Trust Company of New York, *et al.*, pending in the chancery court of Walker county, involving the administration and disposion of the property of the said Lady Ensley Company, the appellant, W. K. Saulsbury, was, on application of the complainant for the appointment of a receiver of such property, duly appointed as such on the 19th day of April, 1893, and he qualified and entered upon the duties of his office. Pending an appeal from the register's order appointing him, towit, on the 4th day of May, 1893, he filed in the cause his resignation of the office. On May 8, 1893, the chancellor, by a decretal order duly enrolled, accepted the resignation, to take effect upon the qualification of his successors therein appointed, and ordered him to turn over to such successors, A. G. Smith and George L. Morris, when qualified, all the property of the said Lady Ensley Coal, Iron & Railroad Company, and to

file his accounts for a final settlement. This order was obeyed. Smith and Morris qualified, and received from Saulsbury immediate possession of all the property. Saulsbury filed his accounts for a final settlement of his receivership, and thereupon the chancellor rendered a decretal order directing the register to audit the same and report, and, further, to ascertain and report a reasonable allowance to be made to the outgoing receiver for his services, and also what sums should be allowed for reasonable solicitor's fees incurred by him in the administration of the trust. This order was based upon a written application by Saulsbury, filed in the cause, showing compliance with the previous order in reference to delivery of the property to his successors, and the filing of the accounts for settlement, and alleging that, during his receivership, he operated the mines and furnaces, and carried on all the business of said company, and that in conducting the same, he required, and secured by employment, the assistance and advice of competent solicitors, and that neither the value of his own services nor of his solicitors had been paid. The petition prayed that the accounts of his receivership be audited and settled, and that reasonable compensation for his own and his solicitors' services be ascertained and allowed. His account and vouchers, which were subsequently reported and adjudged correct, showed that, during his term of official service, he received, in cash, at the four several offices of the company, viz., Birmingham, Horse Creek, Russellville, and Sheffield, the aggregate sum of $24,452.22, and disbursed $22,704.90, leaving a cash balance in his hands of $1,747.32. These disbursements included nothing for his own or his solicitors' services; so that, divested of the possession and control of the property of the company by its delivery to his successors, under the order of the chancellor, for the continued administration of the trust, there remained nothing capable of being applied by him to the payment of his own and solicitors' services except the said balance in his hands of $1,747.32. The register reported an allowance of $2,500 for the services of the receiver; $200 for his solicitor, E. H. Cabaniss, for a special service, and $1,650 for his general counsel, John J. Moore. There is no controversy as to either of these allowances, except the latter; and in respect of

that the chancellor ordered that, upon J. J. Moore filing with the register an itemized statement, under oath, of the services he rendered as solicitor in the cause for the former receiver, showing the value of each and all of such services, the register should hold a reference, and ascertain and report what services were so rendered by said Moore, and the value of the same. The itemized account was filed, and the register reported allowances for Moore's services aggregating $2,275.

It appears, from the evidence, that the receiver voluntarily resigned, after serving 15 days, for the reason that he became tired of the trouble and annoyance of the office. We will not inquire whether a receiver, after accepting the appointment, may, as matter of right, renounce the office and its duties; for, however that may be, the court appointing him may sanction it, as was done in the present case. It does not appear that appellant was guilty of any malfeasance or improper discharge of duty which superinduced his resignation and its acceptance by the court. Under these circumstances, it is equitable that he be protected, within the limit of just principles, against personal loss in respect to the expenses of his administration. In awarding him this protection, care should be taken that no burden be imposed upon the trust estate which was rendered inequitable by his voluntary and premature termination of his office. The estate will not, by his act, be subjected, in his favor, to a double burden. As he was entitled to reasonable legal advice and assistance, so were his successors; and he can not ask allowance for the value of legal service which must needs have been secured and paid for by his successors. When witnesses, therefore, fix the value of a general retainer for the whole administration, which was, as to the appellant, cut short, almost in its inception, by his voluntary resignation, they reckon upon an improper basis. It is not, in such case, a question of the value of such retainer, as between attorney and client. If the contract between them entitles the attorney to full compensation for the whole trust, the client assumes the personal burden and duty of its discharge, without reimbursement, when, by his own act, he deprives the estate of the benefit of the service. We can not, therefore, act upon the estimates of those witnesses who ignore these qualifying condi-

tions.  The estimate, under the circumstances of the
case, should be confined, in considering the value of the
general retainer, to the reasonable value of the general
legal advice and assistance actually rendered the appel-
lant during his administration; and, indeed, if his resig-
nation rendered necessary a duplication, by the succes-
sors, of any such service actually rendered by appellant's
counsel, and which would not have been incurred if ap-
pellant had continued in office, the value of the same
should be excluded from appellant's allowance.  Again,
as we attempted to make clear in *Henry v. Henry*, 103
Ala. 582, care must be taken to distinguish between the
ordinary duties, which the receiver is presumed to know
how to perform as well as one skilled in the law, and
those duties which require special legal skill.

The appellant was entitled to legal advice as to the
general nature and extent of the duties enjoined upon
him by the order of his appointment, but it was not the
province of an attorney to hunt up and take into posses-
sion the property which belonged to the estate.  That
was the receiver's duty, and if he required aid in find-
ing the property, he should have looked to the complain-
ant, who was moving in the matter, and who procured
his appointment, to furnish it.  A lawyer could not have
done it better.  Any complication or obstacle arising, re-
quiring legal advice or proceedings, in the reduction of
the property to possession, would have justified the ex-
pense of an attorney.  None such arose in this matter.
At Sheffield, the officer in charge at first demurred, but
readily yielded upon production of the receiver's com-
mission.  The evidence shows that the property to be
administered consisted of iron furnaces in Sheffield, coal
and iron mines, in operation, in Walker and Franklin
counties, sundry stores, and many other articles of equip-
ment of the various enterprises—all worth, perhaps,
$1,500,000.  General legal advice covering these vast
duties was necessary, and the proof shows it was fur-
nished by Mr. Moore.  His competency and the effi-
ciency of his advice are not assailed.  Eleven witnesses
for appellant fix the value of a general retainer for the
entire receivership at from $1,250 to $2,000, averaging
about $1,700.  Three witnesses *contra*,—two say $150,
and the other $150 or $200, for Moore's general advice.

The register allowed $1,000, which we think, was excessive.

If it was customary and necessary for furnace and coal and coke operators to employ agents in writing, of which we see no proof, the preparation of a form of appointment would require some legal skill, for which a reasonable fee would be allowed. So, also, as to drafting contracts and bills of sale of iron, upon proof of facts showing that it was necessary. It appears that the two contracts were drawn in order to secure bank accommodations to meet pressing need of funds to operate the furnaces, by pledges or sales of iron. In such cases, it was necessary to have the services of an attorney.

In reference to the defendant's appeal from the order appointing appellant as receiver, it was a matter which did not legally concern him. The complainant procured the appointment, upon the apparent equity of its bill and necessity for a receivership. Whether the appointment of a receiver was necessary and proper was for the complainant to show. The duty of sustaining the appointment devolved upon it. The receiver need have paid no attention to the matter. If he chose to defend the appointment, it was his duty to pay for it. Compensation for that service will not be allowed.

Giving bond was a part of the receiver's qualification. He was not receiver until his bond was given and approved. It was his personal duty to prepare and execute it, and if he needed an attorney to do it for him, it must have been at his expense. The clerical duties of preparing and rendering inventories were merely ordinary duties of the receiver. It was proper for his general counsel to advise him of his duties to render inventories, and see that they were in proper shape, but such legal service is comprehended in the general retainer.

The necessity for application to the court for orders to the succeeding receivers, Smith and Morris, to pay laborers employed and worked by appellant, was brought about by the appellant's voluntary resignation. The order of his appointment authorized him to "employ all agents, clerks, attorneys, and servants necessary and proper to aid him in the discharge of his duties as such receiver." This carried with it authority to pay the reasonable cost of such assistance, without further ap-

plication to the court. He incurred the expense, but, before reaching the condition enabling him to exercise the right of paying it, he resigned, and brought on the necessity of petitions to the court for special orders upon his successors. The expense of those petitions was his own.

Appellant, as receiver, made a contract with Matthew, Addy & Co., Cincinnati, for the sale and shipment of iron to certain parties in that city; the firm agreeing to honor his drafts for 80 per cent. of price with bills of lading attached. He shipped about $10,000 worth of iron, and drew on the firm accordingly. When the drafts were presented, the firm had learned that appellant's appointment as receiver was the subject of a pending contest in court, and, fearing liability to pay the money to some one else, declined to pay the drafts, and one of them went to protest. It is admitted they were solvent and responsible, and appellant knew the cause of their refusal to pay. He was, at the time, very much engaged with the duties of his office, and needed the money to carry on the enterprises. He, therefore, procured his attorney, Mr. Moore, to go to Cincinnati to attend to the matter, with instructions to take such steps as were necessary to protect him, and, if the money could not be collected, to stop delivery of the iron to the consignees. Moore proceeded to Cincinnati, and, after considerable negotiation, procured a bank there to indemnify the firm against loss, and the consent of the latter to pay the drafts, which was done. Moore did not, himself, receive the money. We think the nature of the transaction justified the employment of an attorney to attend to it. It was a matter of importance, and might reasonably have required legal skill to determine the proper course to be pursued. If the money had been tied up and lost, through a failure to employ counsel, it is probable the receiver would have been responsible for it. As to the value of the service, 15 practicing lawyers testified. Ten placed the amount at not less than $800; one, $500 to $800; another, $600 to $800; two placed it at $100; one, at $150; and another, at $400. The register allowed $400.

It is customary and proper to allow a fiduciary the benefit of legal counsel to prepare his accounts for, and to represent him on, settlement of the trust. The set-

tlement involved nearly $25,000. There were about 200 disbursements to be sustained. There does not appear to have been any litigation over his accounts. The witnesses vary largely in their estimates of the value of the attorney's services in this behalf. Ten, for the appellant, range from $350 to $750. *Contra*, one says $300; one, $200; one, $150; and another $100. The register allowed $200, and the exception to his ruling should have been overruled.

The petition to the chancellor for a decree of reference to ascertain amount to be allowed for receiver's compensation and solicitor's fees and an order on the successors for their payment was rendered necessary by the appellant's resignation. Otherwise, the questions would have come up on the final settlement of his accounts, after full administration of the trust. No fee should be allowed for it. There was some contest of the receiver's claim for his own compensation, but to what extent we are not informed. Mr. Moore represented him in that matter. There was much contest of Mr. Moore's claim, and considerable time and labor expended on it. The amount claimed was over $5,000. The register allowed $2,275, which the chancellor reduced to $300. We have fixed his other fees at $1,400. It thus appears how greatly excessive his claim was, so far as the estate was chargeable therewith. The burden of the litigation was evidently caused by the excess, and the estate should not suffer on account of it. The claim for cash expended is too indefinite to enable us to determine whether the estate should bear it or not. Ordinarily, such expenditures are considered in the allowance of attorney's fees, and not as a separate charge; and it should appear that they were incident to the performance of necessary legal services. We adjudge to the appellant the following allowances for fees of his solicitor, J. J. Moore: General retainer, $750; preparing contracts for sale of iron, $50; adjusting claim against Matthew, Addy & Co. $400; representing receiver on final settlement of his accounts, $200; total, $1,400.

We have seen that, before realizing money to pay these claims, the receiver resigned, which act the court ratified by accepting the resignation, and then ordered all property to be turned over to the successors, at the same time appointed. It was, therefore, impossible for

[Riddle v. Webb.]

the appellant to pay the claims. The receivership continued. The property and affairs of the company were kept in the hands of, and managed and controlled by, the court. As we intimated, in *Henry v. Henry*, 103 Ala. 582 *supra*, might be done, the appellant filed his petition, in substance and effect, to have the claims paid by the succeeding receivers, and that funds be raised from the assets for that purpose. It is equitable, under the circumstances, that this be done. The fund will be under the control of the court, and the amount allowed may be paid to appellant or directly to the solicitor, as the chancellor may deem the better course. The chancellor will also have due regard to the interests of the estate in the manner and means of raising the fund. The decree of the chancellor will be reversed, and the cause remanded, to be proceeded in in conformity to this opinion.

Reversed and remanded.