HORACE ANDREWS et al., Respondents, *v.* THOMAS M. TYNG, Appellant.

The General Term of the Supreme Court has no authority on appeal to determine the amount of unsettled damages ; at least where no facts are found below upon which an estimate as to the true amount can be made.

Accordingly *held*, where on trial before a referee in an action for attorney's services wherein the defendant set up a breach of the contract of employment on the part of plaintiffs, and the referee found the breach, but allowed only nominal damages, and where the General Term decided this to be erroneous and that defendant was entitled to substantial damages, that it was error for the General Term to fix the damages; that it only had authority to order a new trial, so that the amount of damages might be determined by a trial court.

Plaintiffs agreed to prosecute two actions for defendant for a specified sum as retaining fee, an allowance for each day's attendance before a referee, and a percentage of any recoveries. Because of non-payment of the retaining fee, and the daily allowance, plaintiffs, as the referee found, "refused to be bound by the contract," but they continued thereafter as attorneys of record and acted in that relation, and as such, without the knowledge of their client and in hostility to his interests stipulated to vacate an order in his favor, granted in one of said actions. *Held*, that plaintiffs' contract was an entire one ; that conceding because of the non-payment of fees, they might refuse to act, they could waive the default, and having so done, by acting as attorneys thereafter, and their action being wrongful and adverse to their client, they were not entitled to compensation for any services in said suit.

Before plaintiffs' refusal to be bound a judgment against defendant had been rendered in the other of said actions. *Held*, that plaintiffs could only recover under and according to the terms of the contract.

(Submitted October 10, 1883 ; decided November 20, 1883.)

APPEAL from a judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made October 28, 1881, which affirmed a judgment in favor of the plaintiffs, entered upon the report of a referee.

The complaint stated that the plaintiffs were lawyers, and set forth, in substance, two causes of action : *First.* An indebtedness for services rendered upon defendant's retainer in the prosecution of two suits — one against Baird and others and another against Fields and others. *Second.* A debt due them as assignees of Delevan for money paid by him for the defendant.

The defendant pleaded a special agreement by which the plaintiffs were " to use their best efforts " in his behalf in said actions, in consideration that he would pay them $300 as retainers — $10 for each day's actual attendance before a referee, ten *per centum* upon the amount of any recovery, and all costs and allowances that might be recovered and paid in those suits ; that they failed to keep their agreement, and while acting as his attorneys combined to injure him, " and in the interest of his opponents " abandoned the actions intrusted to them to prosecute " to his injury more than $10,000," and asked judgment accordingly. By reply these allegations are controverted.

The issues were tried before a referee. He found the employment of the plaintiffs upon terms substantially as claimed by the defendant ; that prior to July 26, 1870, he paid them $175, and on that day, after repeated, unavailing demands for further payments of " retainers and compensation on this agreement," they, by reason of defendant's failure to meet those demands, " refused to be further bound by the agreement, and withdrew from it." By that time the Fields suit had gone into judgment against the plaintiffs therein. The suit against Baird and others was still pending, but they also obtained judgment

on the 25th of October, 1870. Afterward the plaintiff therein — defendant here — acting in his own person, made a motion upon the merits to vacate and set aside that judgment, and succeeded. But on the 2d of February, 1871, the plaintiffs, as his attorneys of record, but without his knowledge or consent, stipulated in writing that the order of January 25, obtained by him, be vacated and set aside, and the motion dismissed. On the 21st of February, Baird's attorneys, on notice to these plaintiffs as attorneys of record, but without personal notice to the plaintiff in that suit, obtained an order allowing $10,000 additional costs, and entered judgment accordingly. This also, on application of this defendant, was vacated by the court, and the order of January 25, 1871, restored as of the date of its entry. The referee held, as matter of law, that the giving of consent by the plaintiffs, whereby the order theretofore obtained by the defendant (plaintiff in the Baird suit) was set aside, was wrongful, and the defendant entitled to recover from them his damages sustained thereby, and those damages he assessed at six cents. He allowed the plaintiffs for all services in the

|  |  |  |
|---|---:|---:|
| Baird suit (except attendance before the referee).. | $750 | 00 |
| For eight attendances at which there was no hearing, $10 each........................................ | 80 | 00 |
| For five at which proceedings were had, $50 each, | 250 | 00 |
|  | $1,080 | 00 |
| For all services in the Fields suit, except attendance before referee ............................. | $700 | 00 |
| For ten such attendances, $10 each.............. | 100 | 00 |
| For fifteen attendances, when the trial went on, $50 each.................................... | 750 | 00 |
|  | $1,550 | 00 |

And for the second cause of action as claimed by the plaintiff — in the aggregate upon all claims, $3,197.54. After judgment upon the referee's report the defendant appealed to the Supreme Court, where an order was made that the judg-

ment be "in all things reversed for error of law and fact and a new trial granted," unless the plaintiffs  *  *  *   stipulate that it be reduced in amount to the sum of $2,697.54, and in that case it be affirmed. The plaintiffs stipulated and judgment was modified accordingly. The defendant appeals to this court.

*Matthew L. Harney* for appellant. The contract was an entirety, and the service was single ; it was an executory contract, of which full performance was necessary, before any cause of action accrued for the value of any services rendered under it. (*Bathgate* v. *Haskins*, 59 N. Y. 533 ; *Place* v. *McIlvain*, 38 id. 96 ; *London* v. *Taxing District*, 14 Otto, 771.) As the contract was never rescinded it was in force till the plaintiffs saw fit to abandon it. (*Clark* v. *Mayo*, 4 Comst. 538.) This was a case for exemplary damages. (Sedgwick on Damages [6th ed.], 35, 554.)

*William H. Andrews* for respondents.

DANFORTH, J. The order of the General Term is an emphatic protest against the injustice of the decision of the referee, and we think the error upon which it stands is not cured by the condition imposed upon the plaintiffs. The answer charges a serious breach of duty on their part — the referee substantially sustains the allegation, but, in the opinion of the General Term, he failed to carry out his finding to a legitimate conclusion. He awarded·a nominal sum only to the defendant, and the condition imposed by the General Term requires in its stead the allowance of substantial damages. The plaintiffs accede to this, and in one sense the defendant is not aggrieved, for the judgment is thereby diminished in his favor. Yet, we think, it should not stand against his appeal. The sum allowed by the referee is criticised as wholly inadequate, while that fixed by the Supreme Court is much less than the claim of the defendant. There is no fact found upon which an estimate as to the true amount can be made, and the case con-

tains no evidence. Hence a difficulty is presented as the learned court below also found. They concluded that injustice had been done to the defendant, and that the award by the referee should have been more liberal — precisely how much more could not be stated, but it was said to be " at least $500." The uncertainty is thus apparent, and we can find no authority by which that court can determine the amount of unsettled damages ; therefore, as the error did, in its opinion, require a reversal of the judgment, it had no alternative, but to grant a new trial in order that the amount of these damages might be fixed by a trial court. ( *Whitehead* v. *Kennedy*, 69 N. Y. 462.)

The facts actually found furnish abundant materials for another view of this case. The rights of the attorneys corresponded to their duties. They were bound not only by retainer, but by special contract, to serve until the close of the litigation upon which they entered, unless sooner legally discharged. Their contract was an entire one. It may be conceded that for the non-payment of fees they might refuse to act for their client, or might submit the excuse to the court, and be discharged, yet they might also waive his default. In this case, although on the 26th of July, 1870, "they," as the referee says, "refused to be bound by the contract," they continued attorneys of record, and acted in that relation as late as the 2d of February, 1871, when, without the consent or knowledge of their client, but still as his attorneys, they vacated an order theretofore obtained in the cause. That the order so vacated was one in his favor, and they, in vacating it, acted in a manner hostile to him and his interest, cannot alter the fact that what they did was done by them as his attorneys, and could have had no effect, except so done. It was an act in the cause, and the plaintiffs should not be permitted to say that in doing it they were not acting in it, and for their client. If that relation existed at that time, no cause of action was made out by the plaintiffs, for that depended upon the withdrawal of the plaintiffs on the 26th of July, and if the act was wrongful — adverse to their client, and to the advantage of the other side,

they could have no right to compensation for any services in the suit. The law does not tolerate prevarication in the service of an attorney, or permit him to use his position as such to the prejudice of the party for whom he professes to act. The referee declares that the plaintiffs not only declined to substitute other attorneys in either of the suits without being first paid or secured," but availed " themselves of the position that their refusal to grant a substitution left them in, as attorneys of record," to destroy the advantage which the defendant, by his own effort and without their aid, had obtained. One cannot, after assuming the relation of attorney to a client, throw it off and resume it at pleasure, and to his client's prejudice, and again discard it to his own advantage. Here then was not only the obligation of a contract, but a duty which the law implied — a continuous one while the relation of attorney and client existed. The duty was violated, not by negligence, but willfully, and under circumstances, which both courts hold entitle the client to indemnity. For services in the Baird suit, therefore, as the case is now before us, the plaintiffs could rightfully recover nothing. They are left in the attitude of wrong-doers, and cannot be permitted to measure the damages resulting from their own wrong. (*Chatfield* v. *Simonson*, 92 N. Y. 210.) If, however, the undertaking of the plaintiffs in the two suits is regarded as separable, they might recover for services in the one against Fields, but only according to the contract. Judgment had been entered in that action before the plaintiffs refused to be bound by the agreement, and their damages should have been assessed according to its terms. Upon another trial a different state of facts may be disclosed. Without further reference, therefore, to this claim; upon the grounds before mentioned, we think the appeal must prevail.

The judgment of the General Term, and that entered upon the report of the referee, should be reversed, and a new trial granted, with costs to abide the event.

All concur.

Judgments reversed.