HOBOKEN, TRUST COMPANY

*v.*

JOHN JOSEPH NORTON et al.

---

On petition of JOHN J. NORTON, and JOHN L. RICHARDSON, his guardian,

*v.*

LEON ABBETT.

[Decided May 1st, 1919.]

1. A decree should order taxed costs paid to the party to whose side the award is made and not to the solicitor of that party, as costs are recoverable by the parties to reimburse them for money expended in the prosecution or defence of a suit, although the solicitor may be entitled to all of the costs recovered; that is a matter between him and his client.

2. Where costs are not awarded in favor of one party as against the other, they are taxable as between solicitor and client.

3. Counsel fees are only earned by fidelity to, and activity for, a client and his interests.

4. The same rule applies, with even greater severity, in the case of an attorney than in the case of a trustee. Commissions are a compensation for the faithful discharge of duty, and when trustees violate their duty and commingle money belonging to their *cestui que trust* with their own, and use part or all of it for their own private purposes, they are not entitled to commissions.

5. Clients are not alone concerned in the conduct of their solicitors, but, also, the court and public, when the clients have been injured by the conduct of their solicitors contrary to the character of the legal profession and opposed to sound public policy and a proper and decorous administration of the law.

6. When a solicitor did not remit to his clients the amount he collected for them, less his fees and costs, but concealed the fact of collection, and converted the entire fund to his own use, and is only in a position to pay it over because, since discovery, the compulsory process of the court has been laid upon him, he has forfeited all right to compensation for his services to his clients, and may recover only his actual disbursements in their behalf.

7. It is an absolute duty of a solicitor to forthwith notify his client of a collection made for his account, and to make remittance to him, less his proper charges, as soon as he reasonably can do so after receipt of his client's money.

---

On bill, &c. On petition, &c. On application for an order that respondent forthwith pay over moneys collected as solicitor.

*Mr. Frederick K. Hopkins,* for the petitioners.

*Mr. Leon Abbett,* respondent, *pro se.*

WALKER, CHANCELLOR.

The bill in this case is one of interpleader and prayed for leave to pay into court a certain fund concerning which the defendants disputed ownership, and to require them to litigate their respective claims between themselves. On June 6th, 1918, a decree was made that the bill of interpleader was properly brought and ordering the payment into court of the fund held by the complainant, which amounted to $7,038. Thereafter such proceedings were had in the cause that on January 2d, 1919, a decree was made by consent endorsed thereon by Leon Abbett, solicitor for defendants John J. Norton and John L. Richardson,

guardian, &c., and Benjamin M. Weinberg, solicitor of the defendant Mary Norton, wherein it was, among other things, ordered that there be paid to Leon Abbett, solicitor, &c., his taxed bill of costs, and that $1,000 of the fund be paid to Mary Norton or her solicitor, and to the defendants John J. Norton and John L. Richardson, guardian, &c., or to their solicitor, the balance of the fund; which decree was filed the next day, January 3d, 1919. In pursuance of this decree and on January 14th, 1919, a check was drawn on the funds in this court to the order of Leon Abbett, solicitor, for the sum of $6,047.75, being the balance of the fund to which the present petitioners, his clients, were entitled, according to the decree. The check was thereupon forwarded by the clerk of this court to Mr. Abbett, who endorsed it as solicitor and deposited it to his personal account and commingled it with his own funds in the Hudson Trust Company's bank at Hoboken, and used it for his own purposes. In the latter part of February, 1919, Mr. Hopkins, the solicitor of the petitioners, was informed by the parties in interest that this money had not been remitted to them, and he was instructed to investigate the matter. He thereupon telephoned to Mr. Abbett, who informed him that he and Mrs. Norton's solicitor had agreed upon the substance of a decree, but not upon its form, and that they were waiting for an opportunity to get together so that they could both consent to the decree and have it advised by the advisory master to whom the matter had been referred. On March 4th, 1919, Mr. Hopkins visited the office of the clerk in chancery and found that the decree which Mr. Abbett in the latter part of February, 1919, had informed him had not been drawn, had, on the contrary, actually been drawn, advised by the advisory master, signed by the chancellor, and filed in the clerk's office on January 3d, 1919, and that the check in pursuance thereof, which had been made to the order of Mr. Abbett, as solicitor, on January 14th, 1919, bore his endorsement and had been paid by the bank and returned to, and was then in the possession of, the clerk of this court. It thus appears that when Mr. Abbett informed Mr. Hopkins that he was waiting for an opportunity to treat with Mrs. Norton's solicitor concerning the form of a decree, the

decree had actually been filed for nearly two months, and he (Abbett) had had the money for over one month.

Mr. Hopkins made an immediate investigation and found that Mr. Abbett had deposited the amount of the check to his individual account and commingled it with his own funds on deposit with the Hudson Trust Company, where he had at the time a balance of less than $100. At the time of the making of the investigation Mr. Abbett's balance with the Hudson Trust Company was less than $3,000, and he had checked out to his own order, as trustee of a bankrupt, a considerable sum and deposited that check in the Second National Bank of Hoboken.

On a petition filed disclosing these facts an order was made on Mr. Abbett to show cause why a summary hearing should not be had of the matters set forth in the petition and an order made that he be required forthwith to pay to the petitioners the sum of $6,047.75 so paid to him. On the return of the order he appeared and asked for a continuance, which was consented to by his adversary. This was to afford him an opportunity to raise the money necessary to respond to the petitioners. The order to show cause restrained the Hudson Trust Company and the Second National Bank of Hoboken from paying to Mr. Abbett or to any other person on his order, any sum of money standing to his credit in either of those banks, until the further order of the court to the contrary. On April 10th, 1919, Mr. Hopkins and Mr. Abbett appeared before me and consented in open court than an order be made vacating the restraint on the Second National Bank of Hoboken, to the end that checks drawn by Mr. Abbett as trustee in bankruptcy to the creditors of his bankrupt, might be paid, he, Abbett, having deposited in the Hudson Trust Company amounts which in the aggregate made more than the amount paid to him for his clients, Norton and Richardson, by the clerk's check of January 14th, 1919. The order was accordingly made.

Mr. Abbett has filed no answer to the petition; has presented no affidavit, nor in anywise denied the truthfulness of the matter set out in the petition and verified by the affidavit annexed. He is now willing to pay over to his clients the money which he

collected for them, less a fee of $500 which was agreed upon, besides his taxed costs. His clients resist this payment, contending that he is not entitled to so much, if anything, by reason of his derelict conduct above set out.

Before dealing with the question of the counsel fee, I will refer to the taxed costs. The decree in this cause erroneously provided that "there be paid to Leon Abbett, solicitor of the defendants John J. Norton and John L. Richardson, the guardian of the person and estate of John J. Norton, his taxed bill of costs." There should have been no award of costs, as they were not to be taxed in favor of one party against the other; the decree reciting that Mary Norton was entitled to $1,000 and John J. Norton and his guardian, to the balance of the fund. In this situation Mr. Abbett could have had costs taxed as between solicitor and client and collected them from his client along with his fee. The decree in terms practically awards costs to the solicitor against his client, and this is never done unless on application for the purpose, on notice given to the client. Costs are recoverable by the parties to reimburse them for money necessarily expended in the prosecution or defence of the suit, and the decree or judgment is in favor of the party, not the solicitor or attorney. As between a party and his solicitor it generally happens that the latter is entitled to all of the costs recovered, but that is only so because the solicitor's column contains fees for services rendered by him, and as to the columns for the court and others he is entitled to them for reimbursement, when he has paid them himself. See *Ely* v. *Peet, 52 N. J. Eq. 734.* The matter of costs is adjustable between solicitors and clients.

In this case bills of costs were taxed, as follows: those of Mr. Norton at $51.54, those of Mr. Richardson, guardian, at $14.58. In the Norton bill, in the solicitor's column, are fees for services aggregating $37.60, that leaves $13.94 as the amount disbursed to the court and others. And in the Richardson bill, in the solicitor's column, are fees for services aggregating $13.80, that leaves seventy-eight cents as the amount disbursed to the court and others.

Counsel fees are only earned by fidelity to, and activity for, a client and his interests.

In *Adriaans* v. *Dill, 37 App. D. C. 59*, in a suit in equity to vacate a fee contract fraudulently obtained by the attorney, the fraud being established, it was held that he would not be allowed remuneration for the services he had actually performed, especially where he relied upon the contract and did not offer to accept the reasonable value of his services.

In *Chatfield* v. *Simonson, 10 Daly 295*, where an attorney for one party in consideration of a sum paid to him, a portion of which he received without the knowledge of his client, released part of the subject-matter of the litigation to his client's adversary, it was held that he thereby forfeited all claim to compensation for his services in that particular litigation, even though it did not appear that the client had suffered actual damage from the breach of duty by the attorney.

In *Brackett* v. *Norton, 4 Conn. 517*, it was held that if an attorney, after having obtained final judgment and execution, prevented the collection of the execution by fraudulent conduct in violation of his duty as attorney, it would deprive him of all legal claim for his services in procuring such judgment and execution.

In *Larey* v. *Baker, 86 Ga. 468*, it was held that where an agent or attorney is unfaithful to his trust or violates his instructions, he is not entitled to any compensation.

In *Andrews* v. *Tyng, 94 N. Y. 16*, it was held, conceding that because of non-payment of fees attorneys might refuse to act, nevertheless, they, having waived default by acting thereafter, and their action being wrongful and adverse to their client, they were not entitled to compensation for any services in the suit.

The same rule applies, with even greater severity, in the case of an attorney than in the case of a trustee. Commissions are a compensation for the faithful discharge of duty; and when trustees violate their duty and commingle money belonging to their *cestui que trust* with their own and use part or all of it for their own private purposes, they are not entitled to com-

missions. This is too axiomatic to need the citation of authorities to support it.

In *Ingersoll* v. *Coal Co., 117 Tenn. 263,* it was held that it is not the client alone who is concerned in the conduct of attorneys at law, but, also, the court and the public, and the issue is not whether the client has been injured but whether the conduct of the attorney has been contrary to the character of the profession and opposed to a sound public policy and to a proper and decorous administration of the law. In that case, as the court remarked, the suit did not concern the clients especially, who would neither be benefited nor burdened by it; that they were interested in it in the same sense that the general public was interested, and not by their individual relation to it. Not so here. This is a matter in which clients are especially concerned, and, therefore, the rule of law voiced by the supreme court of Tennessee, in its application in the case at bar, is, that the clients are not alone concerned in the conduct of their solicitor, but, also, the court and the public, because the clients have been injured by the conduct of the solicitor, which has been contrary to the character of the profession and opposed to a sound public policy and to a proper and decorous administration of the law.

When it is remembered that Mr. Abbett did not send his clients a check for the amount he collected for them, less his fee and costs, but concealed the fact of collection and converted the entire fund to his own use, and is only now in a position to pay it over because, since discovery, the compulsory process of this court has been laid upon him, he has forfeited all right to compensation for his services.

The result reached is, that Mr. Abbett is entitled to retain $13.94 for his disbursements for Mr. Norton, and seventy-eight cents for his disbursements for Mr. Richardson, guardian, or $14.72 in all, and the rest of the fund collected by him must be turned over forthwith to his clients, without any deduction for fees as solicitor or counsel, not excepting the fees for services included in the taxed bills of costs.

Mr. Abbett may consider himself fortunate that he is not visited with the costs of these proceedings and a counsel fee to indemnify his former clients for their expenses in having thus to collect from him what he had collected for them. This was the course taken by this court in *Bullock* v. *Angleman, 82 N. J. Eq. 23.* An examination of the opinion in that case will show that the solicitor was permitted to retain his fee agreed upon; but that was because his client made no objection to its retention, and only demanded that he pay over the balance after deducting his fee. An examination of the pleadings will disclose this fact, although it is not stated in the opinion.

That the court has authority to exercise summary jurisdiction over its solicitors in matters such as that with which I am dealing in the case *sub judice* is firmly established. The most conspicuous example is *Lynde* v. *Lynde, 64 N. J. Eq. 736.*

I have not said, and do not wish to be understood as intimating, that a solicitor or attorney may not with propriety deposit a check which he receives for and on account of a client in his individual account at his bank. All solicitors and attorneys do not keep bank accounts as such, and, even if they did, a conversion by one to his own use could as easily be accomplished out of a fund deposited to his credit as solicitor or attorney as in his individual name. What I do say, and I do not wish to be misunderstood about it, is, that it is the absolute duty of a solicitor or attorney to forthwith notify his client of a collection made for his account and to make remittance to him, less his proper charges, as soon as he reasonably can do so after the receipt of his client's money. The practice indulged in by some solicitors and attorneys of retaining money collected for clients for an indefinite period deserves the severest reprobation.