The bill in this case was filed September 24th, 1915, and on October 8th, 1915, upon the return of an order to show cause thereon the late Judge John G. Horner was appointed receiver for the creditors and stockholders of the defendant corporation. Judge Horner having died, Harvey F. Carr, Esquire, was appointed receiver in his place and stead on March 18th, 1918. The assets of the estate, services of the receiver and his counsel, result thereof, the amount paid on account of compensation and the amount now asked, can, perhaps, be best stated by quoting in full the notice sent by the present petitioners to the creditors, which forms the basis of this application, as follows: *Page 443 
"To the Creditors of West Jersey Mortgage Company:
"The receiver has heretofore filed in the court of chancery his second and final report and account of the administration of the said estate. Said report shows that the receiver received on the date of his appointment [March 26th, 1918] inventoried assets of $30,908.63; that by the work of the receiver and his counsel the receiver has brought into the estate and collected the sum of $274,047.96; that this result was obtained, not by increase in value of any real estate in the hands of receiver, but by litigation, c., of the receiver; that the total claims filed with the receiver amounted to $552,348.08, being two hundred and sixty-eight in number; that, by the determinations of the receiver, these were reduced by the sum of $214,150.59; that the total amount of claims allowed was $338,197.19; that there was on the date of said final report and account in the hands of receiver $120,374.29, subject to being increased by interest on bank balances accruing since June 1st to date of settlement. In the said report the receiver prays for the allowance of compensation to the receiver and his counsel and for an allowance for disbursements and expenses of the receiver and his counsel, including clerical assistance. After deducting said proposed allowances, the receiver will be able to pay further dividend of approximately twenty-five per cent. Accompanying said report, there was filed a petition of the receiver and his counsel, setting forth in detail the services performed by the receiver and counsel, and also the character, nature and amount of the clerical services for which receiver and his counsel are asking reimbursement.
"Take nntice, that a hearing upon said final account and petition of the receiver will take place before the Honorable Edwin Robert Walker, chancellor of the State of New Jersey, at the State House, in the city of Trenton, New Jersey, on Tuesday, the 5th day of August, 1924, at ten-thirty o'clock [daylight-saving time] in the forenoon of said day, at which time the receiver will ask that the said account and report be approved, and that the prayer of the said petition be granted, and that there be allowed to said receiver as compensation the sum of $12,000, in addition to moneys paid to him on account before the filing of said report and account; that there be allowed to Henry F. Stockwell, counsel for the said receiver, as compensation $10,000, in addition to moneys heretofore paid to him on account before the filing of said report and account; that allowances be made to the receiver and to his counsel as reimbursement to them for the clerical assistance in their respective offices as follows: To the said receiver at the rate of $1,000 per annum for the six-year period, or a total of $6,000, and to his counsel, Henry F. Stockwell, at the rate of $1,200 for the first four years and $800 for the last two years of said period, or a total of $6,400 for said clerical assistance; that the sum of $2,000 be allowed to Harvey F. Carr as solicitor for the original receiver, and that the balance on hand, after all disbursements and allowances, be distributed prorata among creditors whose claims have been allowed. During the six years since the appointment of the said receiver and his counsel, there have *Page 444 
been allowances to the receiver on account of compensation up to the filing of said final account, aggregating the sum of $11,000, and for the same period there have been allowances made to receiver's counsel on account of services rendered amounting to the sum of $10,000.
"The general character of the work and the use of extra clerical assistance may be indicated by the fact that there were about two hundred foreclosure suits, in which the receiver was a defendant; that there were numerous suits requiring extensive investigation, in which officers, directors and stockholders of the West Jersey Mortgage Company were defendants [in some suits as many as twenty defendants]; that the said investigations covered the relations between the mortgage company and six or eight inter-related corporations; that separate investigations and adjudications had to be made as to each of the two hundred and sixty-eight claims filed; that at times two to three clerks of the receiver and of his counsel were engaged continuously for weeks in aiding the receiver and his counsel in the above matter; that the actual amount expended by the receiver and his counsel, in wages for services outside of the ordinary administration expenses will equal or exceed the sums hereinbefore mentioned [to wit, $6,000 in said receiver's office and $6,400 in said office of the counsel for receiver], for which sums the receiver and his counsel ask reimbursements, either by way of a designated allowance for such clerical services or by way of addition to the sums asked for by the receiver and his counsel as compensation, and to be included therein. The services thus rendered are set forth in greater detail in the petition of the receiver and his counsel hereinabove referred to, copies of which are available for inspection at the office of the receiver and his counsel, and the original is on file in the office of the clerk in chancery, at Trenton, New Jersey."
In the first place, I desire to observe that there should have been no joint petition by the receiver and his counsel, but the application for compensation to himself and counsel should have been made by the receiver alone. The counsel is not a party to the suit and should not have projected himself into the litigation, not even upon this application. No one but a party to a suit can make any motion in it except for the purpose of being made a party, and a petition filed by a stranger to the suit will be dismissed. Collins v. Kiederling, 87 N.J. Eq. 12. In that case a petition by a master, appointed to sell, was dismissed. A receiver can always apply to the court that appointed him for relief or instructions in a proper case, either personally or by counsel; but the latter being but the representative of the receiver, cannot *Page 445 
apply for himself and in his own name, unless to protect himself from some unwarranted hostility of the receiver.
No one appeared in opposition to the pending application, but, on the contrary, several counsel representing creditors expressed the entire satisfaction of their clients with the requests made for compensation and disbursements, having regard to the great amount of work and labor bestowed by the receiver and his counsel, and the avails gotten by them for the creditors. All of the creditors, however, were not represented, and it becomes the duty of the court to examine carefully into the matter. It is the duty of the courts, whether objections are or are not made by creditors, to supervise and closely scrutinize trust accounts.Olson v. State Bank, 72 Minn. 320.
At the time of the death of Judge Horner, the first receiver, Mr. Carr, the present receiver, was, and had been, his counsel, and, by order made at that time, received $3,000 on account of his services, and he now prays an additional allowance of $2,000, as above stated, in the notice to creditors. There was allowed to the estate of the first receiver at the same time the sum of $5,209.08 (being five per cent. of $104,181.59, the amount of his receipts), making in all $8,209.08 for receiver and counsel, which was over seven per cent. upon the collection of $104,181.59 for them. The amount now asked by the present receiver and his counsel together is $36,400, which is, approximately, thirteen per cent. of the sum of $274,047.96, which the present receiver has collected. Included therein, the receiver and his counsel ask for allowances to be made them as reimbursement for clerical assistance in their respective offices; to the receiver, $6,000, and to counsel, $6,400. This is a claim for clerical services rendered in the prosecution of legal work, or, at least, so, almost exclusively so, as to render it unnecessary to consider it as anything else. Especially as it appears that the services of the receiver in this case consisted almost exclusively of law business.
This was no case of a receiver of a manufacturing or commercial enterprise where he was directed to operate a business. *Page 446 
He says himself that the assets of the estate were evolved out of litigation, and this was in litigation both offensive and defensive. The receiver was given power, by order of the court, to employ counsel, and in the petition for such appointment he says that the administration of the trust presented many difficult questions of law, and in all probability would result in a considerable amount of very important litigation. This prediction was prophetic of what turned out to be true, and emphasizes what I remarked above, namely, that the administration of the estate consisted practically of legal business. And the receiver and his counsel assure me that the legal work was, approximately, equally divided between them.
Although a receiver be a member of the bar his duties as receiver being strictly executive or administrative, he is not obliged to perform legal services on behalf of the estate, but may employ counsel to advise and assist him in matters of law.High Rec. (4th ed.) 961 § 808; Olson v. State Bank,supra. And while a receiver should be allowed reasonable counsel fees for legal services rendered necessary in the discharge of his duties, he will not be allowed fees paid to counsel for services which are the ordinary duties he is presumed to know how to perform. Henry v. Henry, 103 Ala. 582; Saulsbury v. LadyEnsley C.I. R. Co., 110 Ala. 585. The application of this doctrine to the case at bar is that Mr. Carr, the receiver, an able lawyer, well knew how to perform the legal services which he so successfully rendered in this case; and, be it said, that Mr. Stockwell, another able lawyer, also gave him valuable advice and assistance in the discharge of those legal duties. But, it seems to me that after reasonable compensation made to the receiver for his services as such, namely, for executive and administrative work, there can be no duplication of compensation for similar services rendered by these two officers of the court, but that compensation in a gross sum should be allowed for legal services to be divided between them in just proportions.
In this class of cases much larger fees have frequently been paid to counsel than to receivers, even where the latter were *Page 447 
lawyers. In Silvers v. Merchants, c., Building Association,56 Atl. Rep. 294, it was held that where a large proportion of the work in settling a receivership, involving very large sums of money, has necessarily been done, not by the receiver, but by his counsel, a commission of three and one-half per cent. is a sufficient compensation to the receiver. Vice-Chancellor Grey, in that case, said that the receiver asked an allowance of five per cent., which would be over $5,000, and that he was not willing to allow the receiver so large a sum, for the reason that it was apparent that much the larger portion of the work was done, not by the receiver, but by his counsel. The receiver's counsel suggested that he ought to have a fee of $10,000, and the vice-chancellor observed that the amount of work done by the receiver's counsel was very large; that the services of severalclerks for some months, and of counsel over practically the whole period of the receivership, were required to adjust the matter and prepare the assets for distribution; that those services justified the allowance of a fee which would be fairly compensatory for the work done, although it might not have been so large as counsel might have demanded. There appears to have been no claim for payment for clerical services in this case in addition to the counsel fee, but the vice-chancellor in making the allowance appears to have had them in mind as a constituent element in the services rendered by the counsel. The amount passing through the receiver's hands in the Silvers Case was somewhat in excess of $100,000, and the total fees allowed, although the situation was extraordinary and the result satisfactory, the vice-chancellor thought ought not to exceed $10,000, and he therefore allowed the receiver's counsel as fees for all his services in the matter the sum of $6,500 (which necessarily included his disbursements for clerical services) and allowed the receiver the sum of $3,500 in full for his services.
See v. Heppenheimer, 69 N.J. Eq. 36, was the suit of a receiver against stockholders for an assessment on unpaid subscription to stock of a corporation, for the benefit of the creditors of the concern. The amount involved was over *Page 448 
$200,000. The case was first heard on demurrer to the bill, which was overruled, and the decree thereon was affirmed on appeal. The report of the case on the merits covers fifty-two pages in69 N.J. Eq., opinion by Vice-Chancellor Pitney. It was argued orally and on briefs, the briefs covering six hundred printed pages. The receiver was offered $170,000, in full settlement, which, by order of the court, was accepted. Pending the litigation, Mr. See, the receiver, died, and the late Frank P. McDermott was appointed receiver in his stead. Both Mr. See and Mr. McDermott were lawyers, but did not participate in the litigation as such, and the avails appear to have been gotten exclusively by the efforts of counsel who were allowed $25,000, which amount was ascertained by order in the cause filed June 15th, 1905, and the sum was made a charge upon the funds in the hands of the receiver prior to the claims of creditors thereon. And the estate of Mr. See, he having performed very few duties, almost all the work being done by his counsel, was awarded $500 as full compensation, and Mr. McDermott, who received and disbursed the avails of the litigation, was allowed $1,000. All this is disclosed in the files of the two cases: In re SolomonMarx for Appointment of Receiver for Columbia Straw Paper Co.,docket 18, page 719, and William G.E. See, Receiver, v.Columbia Straw Paper Co. et als., docket 20, page 790; reported as See v. Heppenheimer, supra. These records in the most pointed manner show the view and action of the court with reference to fees of receivers, strictly as such, and the fees of counsel for receivers, whose professional endeavors raised the fund which was collected and disbursed.
The allowance of counsel fees is regarded as being made to the receiver as an item in his account and not directly to counsel, the allowance being made in the receiver's account in order that he may make compensation to counsel for such service. High Rec.
(4th ed.) 954 § 805; Harrigan v. Gilchrist, 121 Wis. 127,439. And counsel, of course, is entitled to payment from the receiver, and has a lien therefor on the fund. See Ely v.Peet, 52 N.J. Eq. 734; Hoboken Trust Co. v. Norton, 90 N.J. Eq. 314;
also the files in See v. Columbia Straw Paper Co.
(20-790). *Page 449 
Under our practice it is not necessary for a receiver to fix the fees of his counsel in the first instance and insert them as an item in his account, as is done in a great many jurisdictions; in fact, with us it may be said that that course is not allowable. But disbursements, consisting of actual expenses of a fixed amount, such as carfare, hotel bills, c., where necessary, concerning which the court does not make an allowance upon the principle of what they are fairly and reasonably worth, should be charged as items in the receiver's account, if recovery of them is sought. But I have been referred to no case, and have seen none, wherein counsel was allowed as a disbursement moneys paid by him for clerk hire.
In the early days, when there were few lawyers and few cases, all, or practically all, clerical services were performed by them as part of, and incident to, their professional endeavors. No counselor can argue a case without some preparation. When he writes a brief he either does it with his own hand or through an amanuensis. The size of his fee will, and should, contemplate the totality of the services rendered, as well that which is mental as that which is physical. As I understand it, the fees of counsel are fixed somewhat upon the theory of his necessary expenses. His fees are gross and not net, so to speak. If they were net — that is, clear profit free from any expenses — he would not only have to be reimbursed for clerk hire, but, proportionally, for rent, cost of paper, typewriter and ribbons, and a variety of other things. Large fees are given upon the theory that they will be for compensation and by way of reimbursement for expenses, and the fees, allowed and being allowed, in this case, are, I think quite large, even in the circumstances of stress and difficulty.
In Harrigan v. Gilchrist, supra, it was observed (at p.438) that a very large amount of work was done, and in a most methodical way, much of it of the kind commonly performed by law clerks; that the compensation allowable was not the value of the work actually done by the attorney to be computed from the time spent and the amount which an attorney customarily charges his clients, but it is what may *Page 450 
appear to be proper for the work that was reasonably necessary to the due administration of the trust, citing Richardson v.Tyson, 110 Wis. 572; 86 N.W. Rep. 250. The time actually spent and work actually done are important elements, but the controlling feature is the work reasonably required. There must also be considered, of course, the character of the work, the manner in which it was done, and the beneficial results to the trust. See, also, In re Hahn, 84 N.J. Eq. 523.
In the case at bar the activities of the receiver have consisted almost exclusively of legal services rendered by him for the benefit of the estate, and, being a lawyer, he is entitled to compensation for legal services. He had, in addition, the benefit of the advice and assistance of associate counsel selected by himself with leave of the court. These legal services were therefore jointly rendered by them; and for those services there will be an award made for counsel fees, not separate awards to each, but one award to both. That they will divide it between themselves is not material to the court or to the creditors.Harrigan v. Gilchrist, supra (at p. 439). The important point is that there is a single award made for legal services, no matter how many participate in its ultimate division. This is usual.
Now, as to the allowances: Mr. Carr, as counsel for the first receiver, was awarded $3,000. This, with the more than $5,000 awarded to the receiver, makes over seven per cent. of the amount collected by that receiver. I would not feel like allowing any additional amount were it not for the fact that, when the $3,000 was awarded, it was expressed in a memorandum, to be made upon the condition that at the conclusion of the receivership an aggregate amount could be more intelligently paid to Mr. Carr as counsel to the first receiver. He now asks for $2,000 in full for service rendered as such counsel. The allowance will be $1,000.
The present receiver now asks $12,000 in addition to the $11,000 heretofore paid him on account, and his counsel asks for $10,000 in addition to the $10,000 heretofore allowed him on account. The present receiver will be allowed *Page 451 
$1,000 in full for his executive and administrative services strictly as receiver. There will be an award of $20,000 in full for legal services, to be divided between the receiver and his counsel, share and share alike, as they agree that they performed equally, or nearly so, the legal work.
The amounts asked for reimbursement for office expenses will be denied. I am entirely unwilling to allow, as a disbursement, any amount representing clerk hire to lawyers in the performance of legal services. I know of no precedent for it, nor am I willing to make one. Counsel fees have always been fixed with some regard to the amount of clerical work done by or for counsel, which is necessarily involved in their legal endeavors. As already stated, counsel fees are not net, but gross. A retaining fee is intended to remunerate counsel for being deprived, by being retained by one party, of the opportunity of rendering services to the other and of receiving pay from him, and the payment of such a fee, in the absence of an express understanding to the contrary, is neither made nor received in payment of services contemplated. 6Corp. Jur. 727. And it is a fee paid to counsel to make sure that he will represent and render service to his client in a given matter or matters. Even this sort of a fee is not, in a certain sense, net, as the counsel receiving it certainly has an office and clerks, and as certainly has to abate some part of that fee in the payment of office rent, clerk hire, c. Then, too, retaining fees are not, at least as a rule are not, paid to counsel retained by a receiver. In such cases they look for compensation to be awarded by the court for services rendered.
In Silvers v. Mechanics, c., Building Assn., supra, the fact that receiver's counsel had the services of several clerks for some months in the discharge of his legal duties, was taken into consideration, but no award was made to reimburse him for clerk hire as such; and in See v. Heppenheimer, supra, no suggestion appears as to clerical services rendered counsel, which must have been very great. If I were to make these allowances, such an adjudication would undoubtedly be drawn into a precedent likely to be extensively *Page 452 
followed in the future. I am not only unwilling to make such a precedent, but I think it would be decidedly wrong to do so.
Regarding the former allowance of $11,000 to the present receiver as $1,000 for receiver's services as such, and $10,000 for professional services, we have an initial allowance to the present receiver and his counsel of $20,000, which, together with the like amount now awarded, makes their counsel fees in loto
$40,000, ample, I think, for their personal services, and to repay them for disbursements to law clerks who assisted them in their professional endeavors, being over fourteen per cent. of $274,047.96, collected by the present receiver, to which is to be accredited the $1,000 included in the amount heretofore allowed to Mr. Carr as receiver herein upon the theory that it represents receiver's fees out of the award heretofore made him, also the $1,000 now allowed him in full for fees as counsel to the former receiver, and the $1,000 awarded to him in full for receiver's fees herein. These awards herein made to the receiver and his counsel could not be justified save for the enormous amount of legal work done by them, as reflected in approximately two hundred foreclosure suits in which the receiver was defendant, and the numerous suits requiring extensive investigation in which the relations between the mortgage company and six or eight interrelated corporations were involved, and also the amount saved to, and collected for, the creditors, making a total collection of $274,047.96 produced only by an enormous amount of legal services extending over a period of some six years, not only in litigation in this court, but also in the court of errors and appeals. In fact, every dollar of it may be said to have been produced only through prodigious and successful legal endeavors, and by such alone.
It will be observed that, in the notice to creditors above set out, the receiver states that a hearing upon his final account and petition would take place before the chancellor at the state house on the return day, at which time the receiver would ask that the account and report be approved and the prayer of the petitioner (for allowances) be granted. *Page 453 
The practice has grown up in this court of late years for receivers to file their accounts and give notice that on a day certain they would apply to have them confirmed and allowed, and would then and there ask for receiver's and counsel fees, usually naming the amount and sometimes including in their order a direction that until the return day the report be kept upon the files of the clerk, open to reasonable inspection and examination of any persons interested therein. This practice of directing that the report be kept on file is desirable at chambers elsewhere than in Trenton, and in such case the direction should be that the report be kept by the sergeant-at-arms, open to inspection, c., but where the report is filed with the clerk of this court, at Trenton, it is more or less absurd to say that it be kept on file until the return day, because it must be so kept and forever thereafter, and is, of course, subject to inspection and examination by any person interested. So far, however, as this practice has entailed the passing and confirmation of accounts by the court because no objection is made by counsel representing interested parties, without the receiver vouching the account and its being audited by or for the court, it will be discontinued — that is, the practice of confirming an account, without vouching and auditing, will be discontinued. It is unobjectionable, and, I think, quite desirable, that these accounts be submitted to the court at chancery chambers in the vicinage where the receiver has been appointed and the trust administered, and where, on the return day, counsel and parties can conveniently appear; but they can only be expected to object to large items and matters of importance, notably, urge some principle affecting the administration and account of the receiver, leaving to an audit, which requires vouching of the account with reference to numerous, sometimes innumerable, items, extending occasionally over a period of years, and sometimes containing almost daily entries.
As is well known, it is quite impossible to settle an account in the orphans court without an audit. The surrogate shall audit and state the accounts of executors, administrators, *Page 454 
guardians and trustees, c., and shall report the same to the orphans court for allowance. Comp. Stat. p. 3855 § 121. The surrogate shall not report any account to the orphans court for allowance and settlement unless the vouchers and receipts have been lodged with him. Orphans Court Rule 17. To audit an account is to see that the accountant is charged with everything with which he is chargeable, and that nothing is placed on the credit side for which he is not justly entitled to credit. 1Koch. N.J. Prob. L. 642. In the prerogative court the account is to be audited and stated by the register. Dick. Prob. Ct. Pr.107, wherein the bar is referred to the valuable suggestions on accounting by executors, c., from Griff. Treat. 109. As in the orphans court, the accountant is required to lodge with the register the vouchers and receipts for payments and disbursements claimed in his account. Prerogative Court Rule 24. Whether or not accounts are excepted to, it is the duty of the court to scrutinize them and pass and confirm them only when, after proper vouching and auditing, it appears that they are correct and ought to be confirmed. See Olsen v. State Bank, supra.
There is no reason why the creditors of an estate in the hands of a receiver should receive any less protection on an accounting in chancery than is required by statute and rule in the probate court. It is hardly to be expected, and should not be required, that small creditors should, either in person or by counsel, inspect the accounts of receivers and file exceptions as the only method of protecting themselves on an accounting. Every guardian and receiver appointed by this court is required to file an inventory and to file in the clerk's office his account, which account may, from time to time, be referred to one of the special masters for report. Chancery Rules 251, 252. And in Dick.Chan. Prec. (rev. ed.) 547, 548, is the form of an order of reference to state receivers' accounts, whereby it is referred to a special master to take and state the account of a receiver. InTuttle v. State Mutual Liability Insurance Co. (conclusions recently filed but not yet reported) Vice-Chancellor Buchanan held that *Page 455 
the receiver's account before him was one which should go to a special master for audit and report under rule 252, it covering such period and amounts of such size, and had so many items as to require a more comprehensive examination than could be given by the court on an order to show cause, and that the numerous parties, whose interests were small, were entitled to more than apro forma examination, irrespective of the apearance of counsel and objection made on their behalf. And again: That in addition to the vouching and proof of expenditures there should be inquiry by the master as to their propriety and reasonableness where his judgment so prompts; such, for instance, would be indicated as to items for office rent, payment of salaries to assistants and telephone service, c. And this as to expenses incurred by the receiver in the performance of the duties of the receivership strictly as such, there being no claim for the allowance of compensation for clerks rendering service in connection with law business for the receivership.
I do not say that the account of a receiver extending over a fairly short period of time, and comprising but comparatively few items, especially where there is no very great amount of money involved, may not be settled by the court on notice to creditors, without a reference to a special master for vouching by the receiver and audit by the master with report thereon by him to the court; but in an account like the present one extending over a period of about a year, which commences at the foot of a first account, which extended over a period of about five years, neither of which has been audited (although the first one was approved in proceedings on order to show cause such as referred to above), the present and final account of the receiver should be vouched and audited according to the methods pursued in the orphans and prerogative courts, and in accordance with the rule of this court, and as pointed out in the Tuttle Case, supra.
Let an order be entered making the allowances aforesaid and referring the account to a special master for auditing in accordance with the rules and practice of the court. *Page 456